Judith ABRAMSON, et al., Plaintiffs,

Donald Airey, et al., Plaintiffs–Appellants,

v.

Larry GONZALEZ, as Secretary of the Florida Department of Professional Regulation, et al., Defendants–Appellees.

No. 90–4099.

United States Court of Appeals, Eleventh Circuit.

Jan. 3, 1992.

Charles M. Kagay, Spiegel Liao & Kagay, San Francisco, Cal., for plaintiffs-appellants.

Bruce Culpepper, Darren A. Schwartz, Haben, Culpepper, Dunbar & French, Tallahassee, Fla., for amicus curiae Florida Psychological Assoc.

John J. Rimes, III, Asst. Atty. Gen., Dept. of Legal Affairs, Dept. of Professional Reg., Tallahassee, Fla., for defendants-appellees.

Before COX and BIRCH, Circuit Judges, and ENGEL *, Senior Circuit Judge.

ENGEL, Senior Circuit Judge:

In this case, the plaintiffs challenge Florida's statutory regulation of the practice of psychology. We find that the state's current method of granting licenses to psychologists is valid, and conclude that the state acted properly in denying the plaintiffs the right to practice as licensed psychologists in Florida. However, we further find that under the state's current statutory scheme, Florida's regulation of professional advertising by unlicensed psychologists is unconstitutional under the first amendment.

## I.

The plaintiffs-appellants are dozens of practicing psychologists, clinical social workers and therapists, plus the Florida Psychological Practitioners' Association ("FPPA"), a private non-profit association

* Honorable Albert J. Engel, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

of psychologists. The defendants are the secretary of the Florida Department of Professional Regulation, the members of the Florida Board of Psychological Examiners, and the members of the Florida Board of Clinical Social Work, Marriage and Family Therapy and Mental Health Counseling, all named in their official capacities.[1]

The licensing and disciplinary regulations governing the practice of psychology in Florida are contained in the state's Psychological Services Act, Fla.Stat. § 490.001 *et seq.*, ("Chapter 490"). Florida first enacted Chapter 490 in 1957. In 1961, the Florida Supreme Court struck down that early version of the law, concluding that the state legislature had unconstitutionally delegated the administration of the statute to the Board of Examiners of Psychology without sufficiently limiting the Board's discretion. *Husband v. Cassel*, 130 So.2d 69, 72 (Fla. 1961). The legislature reenacted the statute that same year, addressing the Court's concerns. *See* Laws of Florida, Chapter 61–473. This new statute remained in effect until July 1, 1979, when it expired under the Regulatory Sunset Act. The Florida Regulatory Sunset Act, Fla.Stat. § 11.61, automatically repeals chapters and sections of the state's laws which are not amended or reenacted after a specified period of time.

During a 30–month period, from July 1, 1979 until Chapter 490's reenactment, effective January 1, 1982, the State of Florida did not regulate the practice of psychology. During this period, however, some municipalities in the state regulated the practice of psychology by requiring practitioners to obtain professional licenses. In 1982, the current version of Chapter 490 took effect. In 1987, the portion of Chapter 490 relating to clinical social workers, marriage and family therapists, mental health counselors, and school psychologists was deleted from Chapter 490 and reenacted as Chapter 491 of the Florida Statutes (Laws of Florida, Chapter 87–52). Though Chapter 491 has no official name, we will refer to it as the "Clinical Counseling Act."[2]

To become a licensed psychologist by examination in Florida, a person must pay application and examination fees, hold a doctoral degree in psychology from an approved program, pass the examination, and have two years or 4,000 hours of experience in the field of psychology in association with or under the supervision of a licensed psychologist. Fla.Stat. § 490.005. An approved doctoral program is one accredited by the American Psychological Association ("APA"), or comparable to such an accredited program. The latter comparable programs must at least be accredited by a regional accrediting body recognized by the Council on Postsecondary Accreditation. Fla.Stat. § 490.005(1)(b) 1., 2. The Act also provides for licensing of persons holding degrees from foreign institutions. Fla.Stat. § 490.005(1)(b) 2., 3. In addition, the statute contains a provision allowing psychologists licensed or certified in other states to obtain a Florida license, provided the educational and professional requirements in the other state met or exceeded those in Florida at the time the applicant obtained his other license. Fla.Stat. § 490.-006.

No laws in Florida prevent anyone from practicing psychology or one of the allied fields, but a person not licensed under either Chapter 490 or 491 is prohibited from holding himself or herself out by any title or description incorporating the following words: psychologist, psychology, psychological, psychodiagnostic, school psychologist, clinical social worker, psychotherapist,

---

**1.** Defendants do not claim any immunity under the eleventh amendment. Since we are not obligated to consider the eleventh amendment *sua sponte, see Sims v. Florida Dep't of Highway Safety and Motor Vehicles,* 862 F.2d 1449 (11th Cir.1989) (*en banc*), we do not address possible immunity.

**2.** We refer to the professions regulated by Chapter 491 as "allied fields." In most relevant respects, the regulations governing the practice of psychology and the allied fields are very similar. Throughout this opinion, we refer primarily to the practice of psychology and Chapter 490, but our analysis applies to the allied fields and the relevant provisions of Chapter 491 as well, except in Sections V and VI of this opinion, which concern issues unique to Chapter 490.

psychotherapy, licensed social worker, psychiatric social worker, psychosocial worker, marriage and family or family therapist, marriage consultant, family counselor, family consultant, mental health counselor, mental health therapist, or mental health consultant. Fla.Stat. §§ 490.012, 491.012. In addition, the Act also prohibits anyone not licensed under Chapters 490 or 491 from describing any test or report that he or she may provide as psychological. *Id.* The law does provide exemptions from the licensing requirements for students, employees of some schools and government agencies, and the clergy. *See* Fla.Stat. §§ 490.014, 491.014.

Anyone not licensed as a psychologist or allied professional in Florida who uses the terms reserved for licensed professionals commits a misdemeanor of the first degree under Florida law. *See* Fla.Stat. §§ 490.-012(3), 491.012(3). Penalties for the use of the term "psychologist" by an unlicensed practitioner include imprisonment not exceeding one year, *see* Fla.Stat. § 775.082, and a criminal fine not exceeding $1,000, *see* Fla.Stat. § 775.083.

When the Florida legislature reenacted Chapter 490 after its sunset repeal, the statute provided two "grandfather" methods for licensure without examination for persons who applied to the Department of Professional Regulation and Board of Psychological Examiners by March 1, 1982. One who had made such an application could be licensed without examination if he or she held:

> a valid certificate to practice psychology issued by the Florida Psychological Association ["FPA"] or the Florida Association of Practicing Psychologists ["FAPP"], or ha[d] submitted proof satisfactory to the board that he ha[d] received a doctoral degree from a university or professional school accredited by an accrediting agency approved by the United States Department of Education in a program that [was] primarily psychological in nature and, subsequent to receiving such degree, ha[d] had 5 years experience, primarily psychological. Two years' experience must [have been] in

Florida, and only one year of experience may [have been] predoctoral.

Laws of Florida, Chapter 81–235.

Although the FPA, FAPP and FPPA provided certification to their members during the 1979–81 sunset period, the above-quoted statute indicates that only those certified by the FPA or FAPP could obtain licenses to practice without examination once Chapter 490 was reenacted. The FPA and FAPP required their certified members to hold doctoral degrees primarily in psychology from a school accredited by an accrediting association recognized by the U.S. Department of Education. However, the FPPA granted certified memberships to persons who held doctoral or masters degrees relating to psychology from institutions which were not accredited in Florida, provided those institutions were "licensed" by the states in which they were located.

Authority to police the practice of psychology and the allied fields rests with Florida's Department of Professional Regulation under Fla.Stat. § 20.30. Within that department, Florida has established a Board of Psychological Examiners to implement the licensing and disciplinary provisions of Chapter 490, and a Board of Clinical Social Work, Marriage and Family Therapy, and Mental Health Counseling, which administers Chapter 491. *See* Fla.Stat. §§ 490.004, 491.004. Positions on the seven-member Florida Board of Psychological Examiners must be filled by five licensed psychologists—who have by definition attained the educational standards of the licensing statute—as well as two Florida citizens who have never been licensed psychologists and are in no way connected with the practice of psychology. Similarly, three of the nine members of the Board created under Chapter 491 must be unconnected with the practice of any of the allied fields. Fla.Stat. § 491.004. Members of the two boards serve four-year terms and are appointed by the governor and confirmed by the state senate. Fla.Stat. §§ 490.004, 491.004.

This case was initiated in 1981 by several persons who wished to practice psychology

in Florida and to hold themselves out as psychologists. The plaintiffs sought prospective injunctive and declaratory relief to restrain the defendants' enforcement of Chapter 490. While evidence was not presented to the district court concerning the educational and professional qualifications of most of the plaintiffs, it appears that several of them hold doctoral degrees, in psychology and other fields, from institutions that are not accredited by the State of Florida. Others attended accredited schools, but received their training in educational programs that were not comparable to those approved by the American Psychological Association. Some of the plaintiffs were licensed as psychologists by local communities in Florida during the 1979–81 sunset period.

None of the plaintiffs is able to meet the educational requirements for licensure by examination in Florida, and as a result, none of them may currently use the title "psychologist" or any related term to describe his or her professional activities. Since Florida law does not restrict the practice of psychology, several of the plaintiffs apparently practice what would commonly be referred to as psychology in the state. However, short of returning to school and repeating their educations, plaintiffs cannot meet the licensing requirements for the practice of psychology in Florida, and therefore cannot use word "psychologist" or the related terms in their advertising or professional activities.

In their initial complaint, the plaintiff psychologists raised various first amendment and antitrust claims against various Florida state officials and board members. At the time the district court granted partial summary judgment for the defendants, a Sixth Amended Complaint had been filed, and the plaintiffs had sought to file a seventh. The U.S. district judge ruled in April 1990 that Chapters 490 and 491 of the Florida Statutes were facially constitutional under the first amendment. Following a bench trial, the court also ruled that the "grandfather" provision covering the sunset period 1979–81 was constitutional, and

had been properly applied to the plaintiffs. The plaintiffs filed a timely appeal.

## II.

■ The district court's legal conclusions are subject to de novo review. *Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir.1990). In reviewing a district court's decision to grant summary judgment, we apply the same legal standards that bound the district court. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). A district court's findings of fact are reviewed under the clearly erroneous standard. *Thelma C. Raley, Inc. v. Kleppe*, 867 F.2d 1326, 1328 (11th Cir.1989). Findings of fact supported by substantial evidence will be upheld on review. *Id.*

Before turning to the merits of the plaintiffs' first amendment challenge to the Psychological Services Act and the Clinical Counseling Act, we must first address the question of facial and as-applied constitutionality, for scant evidence was presented to the district court concerning the plaintiffs' standing. It appears that some of the plaintiffs have unsuccessfully sought licenses under the Acts, while others have not. The district court granted the defendants' motion for summary judgment on the first amendment issue, but addressed only the facial constitutionality of the law. Plaintiffs insist that the district court improperly assumed its ruling was dispositive of the entire first amendment issue. They urge particularly that the statute is unconstitutional as applied to them, an issue not addressed by the court below.

The Supreme Court has allowed those who have not applied for licenses to facially challenge licensing statutes where those statutes effectively gave public officials the power to censor free expression based on the content of the speaker's planned message. *See Secretary of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (charity solicitation); *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (parade); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (film censorship); *Talley v. Cali-*

*fornia,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960) (handbills). "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755–56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) (permitting newspaper publisher to mount a facial challenge to city ordinance which gave mayor discretion to grant or deny permits for the placement of newsracks on public property). Such cases are the exception, however.

■ Normally, a plaintiff challenging the constitutionality of a statute may not argue that the law is invalid in all of its applications, but instead must show how it has infringed his or her rights in particular. If a challenge is made to a licensing statute, a facial attack will not normally be entertained when the grant or denial of a license is not left to the government's discretion, and the law's application is unrelated to expression. *See Plymouth Coal Co. v. Pennsylvania,* 232 U.S. 531, 34 S.Ct. 359, 58 L.Ed. 713 (1914) (coal mining); *Yazoo & Mississippi Valley R.R. Co. v. Jackson Vinegar Co.,* 226 U.S. 217, 33 S.Ct. 40, 57 L.Ed. 193 (1912) (railroad); and *New York ex rel. Lieberman v. Van De Carr,* 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305 (1905) (dairy business), all requiring challenges "as applied."

■ Our review of the facial and as-applied distinction indicates that the concerns which underlie the Supreme Court's willingness to entertain facial challenges are present here, so that even those who have not applied to take the Florida licensing examination may challenge the statute under the first amendment. Clearly we are presented with a challenge to a "law or policy permitting communication in a certain manner for some but not for others [which] raises the specter of content ... censorship." *Lakewood,* 486 U.S. at 763, 108 S.Ct. at 2147. Those psychologists in Florida with licenses may use certain descriptive terms, while those without licens-

es may not. Yet, unlike several cases which have allowed facial challenges, ours is not a case in which "the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Id.* Florida Statutes sections 490.005 and 490.006 spell out the requirements for licensure, vesting little or no discretion in the Board of Psychological Examiners to deny licenses to those who meet the requirements.

Nonetheless, without yet addressing the merits of the argument, we agree that a facial attack on the Florida statute seems appropriate here, for the law in essence requires a license to engage in activity quite possibly protected by the first amendment. Florida, at least until October 1, 1995, does not require a license for the practice of psychology. The license granted to those who meet certain educational and professional requirements then, is not so much a license to practice as it is a license to speak and to advertise. As discussed more fully below, truthful advertising enjoys some protection under the first amendment. Since this is so, the law is at least subject to facial challenge, for it arguably affects the "enjoyment of freedoms which the Constitution guarantees," *Staub v. Baxley,* 355 U.S. 313, 322, 78 S.Ct. 277, 282, 2 L.Ed.2d 302 (1958), and "subject[s] the exercise of First Amendment freedoms to" licensing requirements. *Shuttlesworth v. Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938–39, 22 L.Ed.2d 162 (1969) (both cases allowing facial challenges).

■ Even if an as-applied challenge to the statute were required, we find that the plaintiffs are entitled to raise such a challenge. Again, the license is not a permit to practice psychology, but a permit to advertise and to hold oneself out as a psychologist. All of the plaintiffs have felt the sting of this law, for in application, it allows all to practice, but few to speak. If the constitution entitles plaintiffs to advertise in particular ways, an issue we address below, then as applied to them, the law limits the content of their speech and the scope of their free expression. As Floridians lacking licenses from the Board of Psy-

chological Examiners, they have already had their speech restricted, regardless of their failure to sit for the examination or to appeal the denial of their applications. Even were we to hold that the restriction on their speech is justified, the plaintiffs would at least be entitled to present the argument that both facially and as applied to them, the statute is unconstitutional under the first amendment.

### III.

■ We turn then to the merits of the plaintiffs' first amendment challenge to the Psychological Services Act and the Clinical Counseling Act. The plaintiffs argue that the Florida licensing statutes place an unconstitutional burden on both commercial and non-commercial speech.[3] Clearly the statutes do place restrictions on speech, for apparently *anyone* may currently *practice* psychology or the allied fields in Florida, but only those who have met the examination/academic requirements of the statutes can *say* that they are doing so or hold themselves out as psychologists or allied professionals in advertising, telephone directories, office signs or stationery. We must first determine whether these restrictions are limited to the commercial context, or whether they also limit the right of the plaintiffs to engage in non-commercial speech.

■ The U.S. Constitution affords protection to both commercial and non-commercial speech, though somewhat different standards apply to each. Commercial speech "does no more than propose a commercial transaction." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 771 n. 24, 96 S.Ct. 1817, 1825, 1830 n. 24, 48 L.Ed.2d 346 (1976) (quotation omitted). In enacting or enforcing a restriction on commercial speech, the government need not select the least restrictive means, but rather must narrowly tailor its restriction to

meet the desired objective. *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034–35, 106 L.Ed.2d 388 (1989). For expressive or non-commercial speech—in which society has an interest wholly apart from the speaker's or listener's economic interests—the government's regulation or suppression of speech must be *necessary* to serve a *compelling* state interest, and must be narrowly drawn to achieve that interest. *Widmar v. Vincent*, 454 U.S. 263, 270, 102 S.Ct. 269, 274, 70 L.Ed.2d 440 (1981). Regulations on non-commercial protected speech are subject to strict scrutiny.

■ The plaintiffs argue that Florida has burdened non-commercial speech, as well as commercial, because unlicensed psychologists may not refer to themselves as psychologists in social settings or confidential conversations, even if no commercial relationship is contemplated. However, we find that the Psychological Services Act and the Clinical Counseling Act do not place an unconstitutional burden on the non-commercial speech of these plaintiffs because all of the speech restricted by the statutes is commercial in nature. The restriction on the plaintiffs' ability to hold themselves out as psychologists clearly limits only commercial speech, for surely the sole purpose for holding oneself out as a psychologist is to gain commercial advantages. Even if the plaintiffs wish to hold themselves out as psychologists at cocktail parties or over private dinners, such expression is "related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n. of New York*, 447 U.S. 557, 561, 100 S.Ct. 2343, 2349, 65 L.Ed.2d 341 (1980) (defining commercial speech).

In contrast to restrictions on expressive or non-commercial speech, the limit on speech in the Florida statutes does not

---

**3.** The first amendment to the United States Constitution provides in part: "Congress shall make no law ... abridging the freedom of speech, or of the press...."

 If a statement may not be censored by the federal government, it is also protected from

censorship by the State of Florida. *See Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *Near v. Minnesota ex rel. Olson*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931).

"penalize[ ] the expression of particular points of view and force[ ] speakers to alter their speech to conform with an agenda they do not set." *Pacific Gas & Elec. Co. v. Public Utils. Comm'n. of Calif.*, 475 U.S. 1, 9, 106 S.Ct. 903, 908, 89 L.Ed.2d 1 (1986). Those cases in which a first amendment challenge to a non-commercial restriction on speech was recognized clearly involved a kind of expressive or political speech simply not present here. In *Solomon v. City of Gainesville*, 763 F.2d 1212 (11th Cir.1985), this court struck down a city ordinance which barred street graphics bearing indecent or immoral words or illustrations. A pizza parlor that used a da Vinci human figure in its advertising challenged the law, successfully alleging that it unconstitutionally burdened commercial and non-commercial speech. Similarly in *Pacific Gas & Elec.*, the Supreme Court struck down a public utility commission's requirement that the utility give up space in its monthly newsletter—which had contained political editorials and other items of public interest—so that a citizen's group could express its views. The Court found that the commission's order was an impermissible burden on non-commercial speech, since it affected the content and amount of expression available to the utility itself in its own newsletter.

■ While a statute affecting commercial speech "inextricably intertwined with otherwise fully protected [non-commercial] speech" will be subject to the heightened scrutiny applicable to expressive, non-commercial speech, *Riley v. National Fed'n. of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796, 108 S.Ct. 2667, 2677, 101 L.Ed.2d 669 (1988), we simply fail to see how the expressive abilities of the plaintiffs are affected here. Though the public may have an interest in letting more psychologists hold themselves out as such, that interest arises for purely commercial reasons unrelated to the expression of differing viewpoints or alternative ideas that we traditionally associate with protected first amendment speech. The statutes at issue do not place an unconstitutional burden on non-commercial speech.

## IV.

■ Next we turn to the constitutionality of the statutes' burden on the plaintiffs' commercial speech. The defendants concede that the laws place restrictions on commercial speech, but the parties disagree over the constitutionality of the ban imposed on the speech.

■ Commercial speech now holds something of an intermediate position in first amendment jurisprudence. It is entitled to more protection than some types of speech such as libel or obscenity, but not as much as traditional expressive or political speech. As long as commercial speech describes lawful activity and is *truthful* and *not fraudulent or misleading*, it is entitled to the protections of the first amendment. To regulate or ban commercial speech, the government must (1) have a *substantial* governmental interest, (2) which is *directly advanced* by the restriction, and (3) must demonstrate that there is a *reasonable fit* between the legislature's ends and the *narrowly tailored means* chosen to accomplish those ends. *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989); *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n. of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980).

Beginning October 1, 1995, no person may practice psychology or the allied professions in Florida for compensation unless he or she holds an active valid license to practice. *See* Fla.Stat. §§ 490.012(5); 491.-012(1)(i), (j), (k). Until that date, no statutory limits on the practice of psychology or the allied fields exist in Florida, apart from the limits on the use of the term "psychologist" and related terms described above. Yet under the current system, while Florida has set certain educational and testing requirements for licensing, the state has not explicitly barred those who have not met these requirements from practicing psychology. Unlicensed persons evidently

can practice psychology in Florida as long as they do not *say* that they are doing so.[4]

We hold that as long as Florida has not restricted the practice of psychology, the state may not prevent the plaintiffs from calling themselves psychologists in their commercial speech. If they are allowed to practice psychology, as they apparently are until October 1, 1995 when the law changes, they must be allowed to say truthful things about their work. As long as the plaintiffs do not hold themselves out as *licensed* professionals, they are not saying anything untruthful, for they are in fact psychologists and are permitted to practice that profession under current state law.

The Supreme Court recently considered a similar case involving professional advertising and the first amendment. In *Peel v. Attorney Registration and Disciplinary Comm'n. of Illinois*, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), the State of Illinois challenged an attorney's advertising practice of listing himself as a "Certified Civil Trial Specialist" on his letterhead after he received certification of his trial skills from the National Board of Trial Advocacy, (NBTA), a private organization. Illinois only recognized as "specialists" those attorneys with active patent, trademark or admiralty practices. A majority of the justices agreed that although a state may prohibit misleading advertising entirely, it *may not place an absolute prohibition on potentially misleading information if the information may also be presented in a way that is not deceptive.* "We are satisfied that the consuming public understands that licenses ... are issued by governmental authorities and that a host of certificates—to commend job performance, to convey an educational degree, ...—are issued by private organizations." *Peel,* 110 S.Ct. at 2289 (opinion of Stevens, J.). A majority of the justices rejected the "paternalistic assumption" that the "public would automatically mistake a claim of spe-

cialization for a claim of formal recognition by the State." *Id.* at 2290. While a majority of the justices found that the particular advertising at issue in *Peel* was potentially misleading, five of the nine justices held that in general, the possibility that truthful advertising would be misleading to the public is insufficient to justify a categorical ban on all such speech.

The defendants contend that any commercial speech describing the plaintiffs as psychologists would be false and therefore unprotected by the first amendment since the statute defines a psychologist as someone who is licensed by the state to be a psychologist. Fla.Stat. § 490.003(3). The defendant state officials argue that allowing the plaintiffs to hold themselves out as psychologists would mislead the public into thinking that these persons were necessarily competent and qualified, when in fact they hold degrees from schools or programs which the state does not consider acceptable. Yet a similar argument was implicitly rejected by the Supreme Court in *Peel.* In that case, the thrust of the state bar's argument was that, by its own rules, a "specialist" was a lawyer who concentrated in patent, trademark or admiralty law. By finding that the attorney in that case could legally hold himself out as a specialist in trial practice, the Court necessarily held that the state's own definition of a specialist—or here a psychologist—cannot bar those who truthfully hold themselves out as specialists or psychologists from doing so. *Peel,* 110 S.Ct. at 2289–90.

As a result, we are not bound by Florida's definition of a psychologist, but instead must consider whether allowing the plaintiffs to call themselves psychologists will be actually or potentially misleading. If actually misleading, such speech would not be protected by the first amendment, but if only potentially misleading, the state must craft some narrow restriction on the speech—short of the current outright

---

**4.** "Practice of psychology" means the observations, description, evaluation, interpretation, and modification of human behavior, by the use of scientific and applied psychological principles, methods, and procedures, for the purpose of describing, preventing, alleviating,

or eliminating symptomatic, maladaptive, or undesired behavior and of enhancing interpersonal behavioral health and mental or psychological health.

Fla.Stat. § 490.003(4).

ban—which will directly advance its interest in protecting the public while encouraging a free flow of commercial information. *Peel*, 110 S.Ct. at 2292–93.

Examining the commercial speech that the plaintiffs wish to make in light of the Supreme Court's instructions in *Peel*, we find the speech only potentially, not inherently misleading. The plaintiffs clearly would enjoy no right falsely to hold themselves out as "licensed psychologists." But under the laws of Florida, they may practice psychology without licenses, and truthful advertising which conveys this message would be neither false nor inherently misleading. As they argue in their own brief before this court, plaintiffs ask not for the right to call themselves "licensed psychologists," but only for the right to call themselves psychologists. *See* Appellants' Opening Brief at 22.

Admittedly, some danger exists that the public will be misled if the plaintiffs are permitted to hold themselves out as psychologists. Yet when the first amendment is at issue, "the preferred remedy is more disclosure, rather than less." *Bates v. State Bar of Arizona*, 433 U.S. 350, 375, 97 S.Ct. 2691, 2704, 53 L.Ed.2d 810 (1977) (attorneys' advertisements were protected by the first amendment). *Peel* and earlier cases have described various regulatory safeguards which the state may impose in place of the total ban on commercial speech now in effect. *See Peel*, 110 S.Ct. at 2292 ("a State might consider . . . requiring a disclaimer about . . . the standards of a specialty."); *Bates*, 433 U.S. at 384, 97 S.Ct. at 2709 (states may require "some limited supplementation, by way of warning or disclaimer or the like, . . . so as to assure that the consumer is not misled.").

The first amendment dictates that commercial speech not false or inherently misleading may be regulated, but may not be banned. If in the legislature's wisdom, all persons are allowed to practice psychology, they may not ban entirely some of those practitioners' rights to advertise, for the public has a right to truthful information about the psychological services available to them. "To prefer more disclosure over an outright ban on particular forms of advertising not only protects the advertiser's right to communicate, but also protects the general public's interest in receiving information." *Parker v. Commonwealth of Ky.*, 818 F.2d 504, 509 (6th Cir.1987) (citing *Bates*, 433 U.S. at 375, 97 S.Ct. at 2704). In *Parker*, the Sixth Circuit struck down a Kentucky statute which barred general dentists from holding themselves out as specialists even when they were allowed to perform special services in orthodontics, oral surgery, periodontics and other specialties. The court said:

> If a state permits a dentist to perform orthodontic procedures, we do not believe a state can justify an outright ban on the use of particular terms relating to orthodontics on the theory that such terms inherently mislead the public. To the contrary, by suppressing such speech, the public will possibly be misled into believing that only orthodontists can perform orthodontic procedures. Since this information is truthful and relates to a lawful activity, it is entitled to First Amendment protection.

*Parker*, 818 F.2d at 510 (citing *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982)).

The defendants attempt to distinguish *Peel* and *Parker*, arguing that in both cases the respective states had already given some form of approval to the basic qualifications of each practitioner to practice law (*Peel*) or general dentistry (*Parker*). Though the courts held that the two practitioners could not be barred from advertising their respective specialties within their professions, the states could at least take comfort in the fact that both had been licensed as general practitioners within their fields. In contrast of course, the plaintiffs in our case have never received any official imprimatur to practice psychology.

Even so, we reject the alleged distinction, for in *Peel* and *Parker* the key finding was not that each practitioner had been licensed generally but that each was *engaging in professional activity permitted under state law.* As a result, the courts held that

outright bans on truthful advertising could not stand under the first amendment. Here Florida law, curious though it may seem, allows anyone to practice psychology. Like the *Peel* attorney and *Parker* dentist, the plaintiff psychologists are engaged in professional activity permitted under state law. Consequently, their right to disseminate truthful commercial speech may be restricted, but may not be cut off completely.

Under the *Fox*, 492 U.S. at 480, 109 S.Ct. at 3034, and *Central Hudson*, 447 U.S. at 566, 100 S.Ct. at 2351, tests, there must be a reasonable fit between the government's end and the narrowly tailored means chosen to accomplish that goal. Presumably, Florida's substantial governmental interest is reflected in the "Intent" section of the Psychological Services Act, which states in pertinent part:

> The Legislature further finds that, since such psychological services assist the public primarily with emotional survival, which in turn affects physical and psychological survival, the practice of psychology and school psychology by unqualified persons presents a danger to public health, safety and welfare.

Fla.Stat. § 490.002.

As the *Parker* court indicated, however, the state's interest in protecting its citizens from incompetent health professionals—which in our case the plaintiffs and defendants agree is "substantial"—can be furthered by more, not less disclosure. If the state is concerned about the dangers posed by "unqualified persons," the current system whereby anyone may practice psychology seems an odd one indeed. Nonetheless, as long as that remains the system in Florida, the defendants must adopt narrowly tailored means for directly advancing the state's interest while preserving the plaintiff's right to disseminate truthful commercial speech. *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 663–64, 105 S.Ct. 2265, 2288, 85 L.Ed.2d 652 (1985) (Brennan, J., concurring in part, concurring in judgment in part, dissenting in part) ("[C]ompelling the publication of detailed ... information that would fill far more space than the advertisement itself ... would chill the publication of protected commercial speech and would be entirely out of proportion to the State's legitimate interest in preventing potential deception").

In *Parker,* the court said a general dentist's advertising could avoid the potential for misleading the public by indicating that while he specialized in orthodontics, he did not hold an orthodontia specialty license. "A disclaimer to such an effect would adequately address the state's concern." *Parker,* 818 F.2d at 510. Just as *Parker* noted that there were separate telephone listings for "Dentists" and "Dentists–Orthodontists," there could be separate listings in Florida for "Psychologists" and "Psychologists–Licensed." As the Supreme Court said in *Peel,* we must assume that the public can distinguish between a university degree on the wall and a license issued by the state.

The Supreme Court has recognized the public's right to *receive* truthful commercial information under the first amendment, in addition to the speaker's right to disseminate information helpful to his or her commercial interests. "[T]he First Amendment protects the public's interest in receiving information." *Pacific Gas & Elec. Co.,* 475 U.S. at 8, 106 S.Ct. at 907. "[P]eople will perceive their own best interests if only they are well enough informed, and the best means to that end is to open the channels of communication, rather than to close them.... [T]he First Amendment presumes that some accurate information is better than no information at all." *Central Hudson,* 447 U.S. at 562, 100 S.Ct. at 2349 (citations and quotations omitted). The current versions of the Psychological Services Act and the Clinical Counseling Act place an unconstitutional burden on commercial speech. The summary judgment granted in favor of the defendants is REVERSED, and the case is remanded for proceedings not inconsistent with this opinion.

## V.

■ Next, plaintiffs attack the statutory licensing procedure for psychologists

in Florida, arguing that Chapter 490 improperly subjects them to regulation by interested persons.[5] They contend that those who select the academic programs and universities for accreditation have an economic interest in limiting entry into the field. Specifically, the plaintiffs attack the role of the American Psychological Association ("APA"), which writes, administers and grades the examination given to applicants for licenses. The APA is also the organization which determines whether applicants' schools are worthy of accreditation.

We find no merit to the plaintiffs' argument that the statute improperly subjects them to regulation by interested persons. In *Friedman v. Rogers*, 440 U.S. 1, 18–19, 99 S.Ct. 887, 898–99, 59 L.Ed.2d 100 (1979), the Supreme Court found that an optometrist had no constitutional right to be regulated by a board sympathetic to the commercial practice of optometry, but he did have a constitutional right to a fair and impartial hearing in any disciplinary proceedings conducted against him. If the regulatory board's disciplinary proceedings were affected by prejudicial interests, then those proceedings could be enjoined, said the Court, but in *Friedman* the challenge to the board's actions did not arise out of a disciplinary matter, and the Court declined to issue an injunction. *Id.* at 19, 99 S.Ct. at 899.

Similarly here, the plaintiffs' challenge focuses on the general role of the APA in the profession, not any specific unfairness in a disciplinary matter against practitioners. Certainly, plaintiffs are entitled to raise specific challenges to actions of the Board of Psychological Examiners if they believe the Board has acted improperly in particular cases. *See* Fla.Stat. §§ 120.57, 120.68. Any alleged irregularities in the denial of licenses to specific plaintiffs should be challenged through these available channels, however, not in this proceeding.

As for the alleged unfair role of the APA in the profession generally, Fla.Stat. § 490.004 indicates that members of the defendant Board of Psychological Examiners are not required to be members of the APA, and in fact two board members must be lay persons not associated with the profession or the APA. An argument very similar to that advanced by the plaintiffs has been considered and properly rejected by an appellate court in Florida. *See Moorehead v. Department of Professional Regulation*, 503 So.2d 1318 (Fla.App.1987). The state legislature, not the APA, has set the standards for licensure which the plaintiffs are unable to meet. Any general challenges to the licensing scheme are properly addressed to the legislature, not this court.

Non–APA members can become licensed, and apparently many persons who attended non-APA accredited schools have been approved for the licensure examination once the Board determined that they had attended schools which were "comparable" to APA-accredited schools. The state has not delegated responsibility to the APA to regulate the profession in disciplinary proceedings, and though many licensed psychologists and members of the licensing board are APA members, the plaintiffs have no right to a board composed of sympathetic examiners.

## VI.

Next the plaintiffs argue that Chapter 490 deprived them of vested rights without due process. Florida gave grandfather licensing rights only to those certified by the Florida Psychological Association ("FPA") and the Florida Association of Practicing Psychologists ("FAPP"), but not those certified by the plaintiff Florida Psychological Practitioners' Association ("FPPA"), upon enactment of the new legislation in 1982. During the sunset period 1979–81, the latter group certified persons who had attended non-accredited universities, whereas the former two associations

---

5. Sections V and VI of this opinion apply only to the Psychological Services Act, Fla.Stat.

§ 490.001 *et seq.*

certified only those who had attended APA-accredited (or comparable) institutions.

Some of the plaintiffs apparently practiced psychology and held themselves out as psychologists from 1979–81 in Florida because the state did not regulate the profession at that time. After January 1, 1982 however, persons who had practiced in that period but did not meet specified requirements for education and experience and/or qualify for and pass the examination, could not become licensed psychologists, as outlined in Section I of this opinion. The plaintiffs argue that they should have been given licenses in 1982 if they were able to practice legally during the sunset period.

We disagree with the plaintiffs, and conclude that those plaintiffs who practiced in Florida during the sunset period have not been deprived of vested rights without due process. Certainly there are several cases supporting plaintiffs' position when a state has instituted regulations on a profession for the *first time.* Aside from those reasonable regulations necessary to protect the public health and welfare, a state may not use newly-enacted stricter standards for entry into a profession to deny those already legally practicing the profession of their right to continue practicing thereafter. *See Berger v. Board of Psychologist Examiners*, 521 F.2d 1056, 1063 (D.C.Cir.1975) ("The inequity of the statute is that it fails to account for those competent psychologists who embarked upon their profession when no degree was required and who thus are denied a fair opportunity to come within the statute's licensing requirements at this point."); *Taylor v. Hayes*, 131 Ill.App.2d 305, 311, 264 N.E.2d 814, 818 (1970).

Unlike the practicing psychologists in the *Berger* and *Taylor* cases, however, those Florida psychologists who practiced between 1979–81 knew that the state had regulated the profession from 1957 to 1979, and could with reasonable certainty assume that once the legislature decided on the appropriate language, licensing requirements—carrying with them various educational and experiential standards—would return. "The proposal to amend the law for licensure in the [field of psychology] was not a sudden event." *Donahue v. District of Columbia Bd. of Psychology*, 562 A.2d 116, 123 (D.C.App.1989) (affirming the denial of psychologist's license where academic requirements were increased while applicant was fulfilling requirements of previous statute). Hoping to protect the public from unqualified practitioners, the legislature in 1981 gave grandfather licensing rights only to those who had gained five years of experience in the field, and were certified by the FPA and FAPP as having attended an accredited school, or who could show on their own that they had attended an accredited school. *See* Laws of Florida, Chapter 81–235. The history of licensing and educational requirements in Florida distinguishes this case from those in which a state has regulated a profession for the first time.

While prior practitioners may not arbitrarily or discriminatorily be denied licenses when they did not need one before, *Williamson v. Lee Optical of Okla. Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955), "there is no arbitrary deprivation of such right [to pursue the lawful occupation of one's choice] where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society." *Dent v. West Virginia*, 129 U.S. 114, 122, 9 S.Ct. 231, 233, 32 L.Ed. 623 (1889). A state may impose those professional educational requirements which it believes necessary to protect its citizens. *Graves v. Minnesota*, 272 U.S. 425, 428–29, 47 S.Ct. 122, 123, 71 L.Ed. 331 (1926); *Donahue*, 562 A.2d at 123; *LaBossiere v. Florida Board of Bar Examiners*, 279 So.2d 288, 289 (Fla.1973). The only persons excluded from the grandfather provision allowing licensure without examination were those who either did not hold a doctoral degree primarily in psychology or those who held a doctoral degree from an unaccredited program or institution. The short break in the chain of regulation of the profession caused by applica-

tion of a general sunset law was not sufficiently substantial to create vested rights in plaintiffs to licenses when they did not meet the new educational requirements.[6] In requiring the Congress to develop some non-academic criteria by which the competency of current practitioners could be evaluated, the *Berger* court stated, "it is precisely the inadequacy of the notice afforded current practitioners by the new D.C. licensing statute which makes the denial of grandfather rights unfair." 521 F.2d at 1063. In our case, the history of regulation in Florida, coupled with the anticipation of reregulation after the sunset repeal of the original Chapter 490 gave the requisite notice to the plaintiffs. The grandfather provisions of the Psychological Services Act did not unconstitutionally deprive the plaintiffs of vested rights.

## VII.

■ Finally the plaintiffs argue that the district court improperly denied their request to file a Seventh Amended Complaint. This litigation had commenced in 1981. A motion for permission to file the amended complaint was filed on November 1, 1989. The district court had not acted on the motion when the plaintiffs filed an emergency motion for permission to file the amended complaint on April 2, 1990, a month before the bench trial was scheduled to start. On April 3, 1990, the court, without comment, denied the motion to file the Seventh Amended Complaint. The Seventh Amended Complaint contained new allegations that the challenged statutes were inconsistent with and therefore preempted by those portions of the Sherman Antitrust Act codified at 15 U.S.C. §§ 1 and 2. In earlier complaints, the plaintiffs had presented antitrust claims, and the district court had dismissed the claims as meritless, eventually awarding attorneys fees to the defendants on those counts.

■ We review the district court's decision on the motion to amend the complaint under an abuse of discretion standard. *Stevens v. Gay*, 864 F.2d 113, 116 (11th Cir.1989). Though the plaintiffs argue that the seventh complaint contained antitrust claims unlike those which had earlier been presented and rejected, we conclude that the district court did not abuse its discretion in denying the plaintiffs' motion to amend. Leave to amend a complaint shall be freely given when justice so requires, Fed.R.Civ.P. 15(a), but numerous grounds for denial of the plaintiffs' motion to amend existed here, including undue delay, undue prejudice to the defendants, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Nolin v. Douglas County*, 903 F.2d 1546, 1550 (11th Cir. 1990). The case has dragged on for over nine years, and the plaintiffs have repeatedly amended the complaint. This extended length of time matches that in *National Distillers and Chem. Corp. v. Brad's Mach. Prods., Inc.*, 666 F.2d 492 (11th Cir.1982), where this court upheld a district court's denial of defendant's motion to amend its counterclaims. *See also Henson v. Columbus Bank & Trust Co.*, 770 F.2d 1566, 1574 (11th Cir.1985) (denial of leave to amend upheld where original complaint was filed seven years earlier). In our case, the proposed new complaint, containing a new cause of action unlike those which remained in the Sixth Amended Complaint would have left the defendants little time to prepare for trial on that allegation.

■ Considering the lateness of the amendment, its apparent futility, and the unfairness to the defendants, we cannot say that the district court abused its discretion when it denied the plaintiffs' motion to amend the complaint a seventh time. Though the district court did not articulate the reasons for denial of the motion, we see no need to remand where the reasons are many and obvious as here.

---

**6.** In fact, since Florida lets anyone practice psychology, those who practiced during the sunset period have not lost the right to do so despite the state's unwillingness to give them licenses, except of course the right to *call* themselves psychologists as discussed in Section IV of this opinion.

## VIII.

In sum, the plaintiffs have not stated any valid objections to the licensing scheme or its application to them, and additionally, the district court did not abuse its discretion in denying the plaintiffs' motion to amend their complaint. On these issues, the judgment of the district court is AFFIRMED. However, we conclude that the Psychological Services Act, Fla.Stat. § 490.001 *et seq.*, and the Clinical Counseling Act, Fla.Stat. § 491.002 *et seq.*, place an unconstitutional burden on commercial speech. On the first amendment issue, then, the judgment is REVERSED and the case REMANDED for proceedings not inconsistent with this opinion.

COX, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion except for Part IV which holds that the Florida statutes in question violate the first amendment. Holding oneself out as a psychologist when one is not licensed to practice psychology is, in my view, inherently misleading and therefore not entitled to first amendment protection. I therefore dissent from the holding in Part IV of the majority opinion.

There is no doubt that commercial speech is protected by the first amendment, although somewhat less so than noncommercial speech. *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 638, 105 S.Ct. 2265, 2274, 85 L.Ed.2d 652 (1985). But for commercial speech to come within the protection of the first amendment, it must not be misleading. *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475, 109 S.Ct. 3028, 3032, 106 L.Ed.2d 388 (1989). "[W]hen the particular content or method of the advertising suggests that it is inherently misleading ... the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely." *In re R.M.J.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982).

The majority concludes that it is not inherently misleading for an unlicensed psy-

chologist to hold himself or herself out as a "psychologist," but only potentially so. It is this conclusion—central to the majority's holding—with which I disagree.

The issue in this case focuses on what information is imparted to the public by the use of the term "psychologist." The profession of psychology has been regulated by the State of Florida since 1957 except for a thirty-month period when the regulatory statutes lapsed under Florida's sunset law. For many years, therefore, individuals permitted to call themselves psychologists have been licensed to practice psychology and, of course, possessed those qualifications which Florida required as a condition of licensure. They have been subject to regulation by the State and discipline by the State.

Holding oneself out as a professional not only suggests that the individual practices that particular profession but also suggests that the State has licensed the individual to practice that profession. It follows that advertising that one is a psychologist necessarily suggests to the general public that one is licensed by the state to practice that profession. Calling oneself a psychologist, therefore, is inherently misleading if such an individual is not currently licensed to practice psychology. If the possibility of deception is self-evident, the State does not need to survey the public or to produce evidence to justify its position. *See Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 652, 105 S.Ct. 2265, 2282, 85 L.Ed.2d 652 (1985).

The cases principally relied upon by the majority—*Peel v. Attorney Registration & Disciplinary Comm'n*, 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990) and *Parker v. Kentucky Bd. of Dentistry*, 818 F.2d 504 (6th Cir.1987)—are distinguishable. Neither address the issue we confront today, namely, whether unlicensed "professionals" can advertise, contrary to state law, that they are in fact professionals.

A case more nearly on point is *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602 (4th Cir.1988). In that case an organization composed of practicing account-

ants, most of whom were not licensed certified public accountants (CPAs), challenged on first amendment grounds a Virginia statute that restricted the words unlicensed accountants could use in holding themselves out to the public, including the terms "certified public accountant, CPA, public accountant," etc. *Id.* at 605. The court held that the statute was a "constitutionally permissible regulation of misleading commercial speech," *id.* at 606, saying:

> The state has an interest in assuring the public that only persons who have demonstrated their qualifications as certified public accountants and received a license can hold themselves out as certified public accountants. The Supreme Court has held that "advertising for professional services" may be prohibited "when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse." *R.M.J.*, 455 U.S. at 203, 102 S.Ct. at 937. We believe that use of the title "public accountant" by a non-CPA fairly could be characterized as inherently misleading, given the possibility, accurately stated by the district court, that "some members of the public would believe the title ... has the state's imprimatur."

> The similarity of the title "public accountant" to "certified public accountant" is self-evident. In defining "misleading" for the purpose of the regulation of commercial speech, the Supreme Court has explained that when the possibility of deception is self-evident, the state need not survey the public. *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 652–53, 105 S.Ct. 2265, 2282–83, 85 L.Ed.2d 652 (1985). Accordingly, the Board was not required to make an elaborate evidentiary showing at trial in order to establish the misleading nature of the regulated speech.

*Id.* at 605, 606.

Similarly, in the case at bar there is reason to believe that the use of the title "psychologist" bears the imprimatur of the State of Florida.

I acknowledge that Florida does not yet explicitly forbid the practice of psychology by anyone—regardless of their qualifications. The legislative concern, however, is clear from the statutes—it has found that the practice of psychology and the allied fields by unqualified persons presents a danger to "public health, safety and welfare." Fla.Stat.Ann. §§ 490.002 and 491.-002. In concluding that plaintiffs' use of the term "psychologist" is not inherently misleading, the majority reasons that the plaintiffs "are in fact psychologists and are permitted to practice that profession under current state law." The Florida statutes define the term "psychologist" to mean one licensed as such, *see* Fla.Stat.Ann. § 490.-003, and fix minimum qualifications for persons seeking licensure. The legislature has made clear that no one else is qualified to practice the profession. In finding that the plaintiffs are in fact psychologists, the majority has substituted its judgment for that of the Florida legislature.

The majority's finding that the plaintiffs are in fact psychologists is apparently based on the fact that they have some education in the field of psychology and elect to call themselves psychologists. By that reasoning one is in fact a lawyer if he has some education in the field and elects to call himself a lawyer. The Florida legislature has elected to regulate the profession, and as part of that regulatory scheme has decided who is qualified to practice psychology and who should and should not be called a psychologist. To say that the plaintiffs are permitted to practice their profession under current state law is true only in theory. To do so they must use some other title; they may not call themselves psychologists. The statutes in question are simply "title" acts that undertake to regulate the practice of a profession by prohibiting unqualified individuals from using titles associated with licensed professionals. Many states regulate professions pursuant to similar "title" acts.

The majority acknowledges that Florida may constitutionally prohibit altogether the practice of psychology by unqualified individuals but holds that it may not, consistent with the first amendment, prohibit persons lacking a license from calling themselves psychologists. I do not understand the first amendment to mandate such a holding.