[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 99-13515

_____

D.C. Docket No. 95-00147-CV-JOF-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 03 2000
THOMAS K. KAHN
CLERK

GAIL BREWER-GIORGIO, ARCTIC
CORPORATION, a Georgia Corporation,

Plaintiffs-Appellants,

versus

PRODUCERS VIDEO, INC.,
SYD VINNEDGE, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(July 3, 2000)**

Before BIRCH, BARKETT and ALARCON[*], Circuit Judges.

BARKETT, Circuit Judge:

---

[*] Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Gail Brewer-Giorgio and Arctic Corporation appeal the district court's denial of their motion, filed pursuant to Federal Rule of Civil Procedure 15, to amend their complaint. We affirm.

Gail Brewer-Giorgio alleges that she is the nation's foremost expert on the theory that Elvis Presley is still alive. In 1988, she published her first book titled The Most Incredible Elvis Presley Story Ever Told, which was later renamed Is Elvis Alive? She published the sequel in 1990, which was titled The Elvis Files. Both books were copyrighted and the copyrights were assigned to Arctic Corporation ("Arctic"), Brewer-Giorgio's privately-held corporation. In 1991, Brewer-Giorgio filed a copyright application for an unpublished third book about Elvis, titled Operation Fountain Pen.

On March 19, 1990, Arctic contracted with Producer's Video, Inc. ("PVI") to produce a home video based on The Elvis Files, which was successfully completed. Thereafter, in November 1990, Arctic entered into a second agreement with PVI in which Arctic granted to PVI the "sole, exclusive and perpetual right" to use "any information in Arctic's or Brewer-Giorgio's possession" relating to Elvis in order to produce a television special "dealing with Elvis from his death to the present time, and the exploitation and publication" of the special. The agreement further provided that PVI could "produce any additional production

2

relating to the same subject matter" only after reaching a further agreement with Arctic.

In 1991, PVI produced and broadcast nationwide a television special titled "The Elvis Files." The program was broadcast in the Atlanta, Georgia area by WGNX, Inc. Brewer-Giorgio wrote the script for the special and appeared on the show as a live guest, in a taped interview, and in a dramatized "re-enactment" of a telephone call she allegedly received from Elvis after his death. All of Brewer-Giorgio's rights in the script and her appearances on the program had been transferred to PVI as part of the second agreement. Because "The Elvis Files" was extremely successful, PVI, in conjunction with All American Television, Inc. ("All American"), decided to produce a sequel titled "The Elvis Conspiracy" ("the sequel"). They approached Brewer-Giorgio, who spent the months preceding the broadcast assisting in developing the sequel's script.

Before the sequel was broadcast, a dispute arose over payments due to Brewer-Giorgio and Arctic from the first television special, "The Elvis Files." Because the parties were unable to settle their dispute, Brewer-Giorgio refused to sign the proffered written agreement regarding her participation in the sequel and informed PVI and All American that she would not authorize the broadcast of it. Notwithstanding Brewer-Giorgio's warnings, PVI and All American broadcast the

3

show nationally on January 22, 1992. WGNX again aired the show in the Atlanta area. During the show, Brewer-Giorgio's name was mentioned and a portion of the dramatic re-enactment of the phone call from Elvis was replayed from the first show. At the conclusion of the show, host Bill Bixby stated that he believed that Elvis had died on August 16, 1977.

On January 20, 1995, two days before the three-year statute of limitations on copyright infringements had run on the sequel broadcast, Brewer-Giorgio and Arctic filed this suit for copyright infringement and various state law torts, claiming that she was injured by the broadcast of the sequel because it suggested that she had approved the content of the show, part of which denied the "plausibility" of her theory that Elvis is alive. Brewer-Giorgio named a number of defendants, many of whom dropped out of the suit over the course of the proceedings. Four defendants remain: All American, WGNX, Micki Guzman,[1] and Syd Vinnedge.[2] The original complaint included twelve counts, half of which were dismissed by consent of the parties and the district court. The remaining counts allege 1) United States copyright infringement, 2) foreign copyright

---

[1] Brewer-Giorgio alleges that Micki Guzman, who is a major stockholder of PVI, had a major role in the production and distribution of the sequel.

[2] Brewer-Giorgio alleges that Syd Vinnedge, who is an officer of All American, permitted the nationwide broadcast of the sequel.

4

infringement, 3) invasion of privacy, 4) misappropriation of right of publicity, 5) constructive trust, and 6) fraudulent conveyance.

The individual defendants, Micki Guzman and Syd Vinnedge, filed motions to dismiss for lack of personal jurisdiction, which were denied on March 28, 1996. The court's scheduling order as to All American and WGNX, which answered the complaint, was filed on March 10, 1995, and stated that the time for filing amendments to the complaint would expire on June 9, 1995. Discovery ended on November 15, 1995. On December 15, 1995, All American, WGNX, Guzman, and Vinnedge moved for summary judgment. On February 6, 1996, Brewer-Giorgio filed a motion to amend the complaint in order to include additional allegations of copyright infringement. While the original complaint had alleged that the broadcast of the second Elvis special infringed the copyrights in her books, Brewer-Giorgio sought through amendment to add allegations that the broadcast had also infringed copyrights in a draft script that she had been working on and in the final script of the show.

Brewer-Giorgio asserted that she was entitled as a matter of right to amend under Federal Rule of Civil Procedure 15(a) as to the individual defendants, Guzman and Vinnedge, who had not yet filed an answer to the complaint and sought leave of the court to likewise amend as to All American and WGNX.

5

Although the district court agreed that she had a right to amend as to Guzman and Vinnedge under Rule 15(a), the court refused to allow the amendment because it found that the new claims were barred by the statute of limitations. As to WGNX and All American, both of whom had answered the complaint, the district court refused to allow the amendment, finding that such an amendment was filed after undue delay, would cause undue prejudice to the defendants, and was futile because the statute of limitations had run. The court also granted the motions of WGNX, All American, Vinnedge, and Guzman for summary judgment as to the copyright infringement claims and dismissed the state law claims without prejudice. The fraudulent conveyance claim was dismissed with consent of the parties. Brewer-Giorgio and Arctic appeal only the district court's denial of their motion to amend the complaint. We review the district court's refusal to allow the proposed amendment for abuse of discretion. Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).

DISCUSSION

Where a plaintiff seeks to amend its complaint after the defendant has answered, it may do so "only by leave of court or by written consent of the adverse party." Fed. R. Civ. P. 15(a). Although "[l]eave to amend shall be freely given when justice so requires," a motion to amend may be denied on "numerous

6

grounds" such as "undue delay, undue prejudice to the defendants, and futility of the amendment." Abramson v. Gonzalez, 949 F.2d 1567, 1581 (11th Cir. 1992). As to the responding defendants in this case, All American and WGNX, we find no abuse of discretion in the district court's refusal to allow Brewer-Giorgio to amend her complaint. She moved to amend over a year after she filed her original complaint and eight months after the time for filing amendments provided by the scheduling order had passed, and she has failed to demonstrate good cause for that delay. The district court's determination that her delay was undue was not an abuse of discretion, and we thus affirm its decision as to All American and WGNX. See Sosa, 133 F.3d at 1419 (finding no abuse of discretion where plaintiff had filed amendment after time provided by court's scheduling order and had failed to demonstrate good cause for the delay).

Guzman and Vinnedge, however, had not yet answered the complaint at the time Brewer-Giorgio moved to amend her complaint. Under Federal Rule of Civil Procedure 15(a), a party has the right to amend a pleading without leave of the court so long as they do so before a responsive pleading is served. For the purposes of this Rule, the term "responsive pleading" does not include such filings as a motion to dismiss or a motion for summary judgment. Burns v. Lawther, 53 F.3d 1237, 1241 (11th Cir. 1995). The court, however, nonetheless denied

7

Brewer-Giorgio's motion to amend as to Guzman and Vinnedge on the ground that

the amendment presented a new claim that was barred by the statute of limitations

and, therefore, permitting the amendment would be a futile act.[3] Brewer-Giorgio

argued that the amendment did not constitute a new claim, but rather related back

to her original complaint,[4] and because the original claim was filed before the

expiration of the statute of limitations, the amended claim would not be barred.

The district court rejected this argument, concluding that the claims Brewer-

Giorgio sought to add did not relate back to the filing of the original complaint

because an "infringement of a copyright on a script is an entirely new and different

claim than an infringement of a copyright on a book, and it does not arise out of the

same conduct, transaction, or occurrence."

We review the district court's application of Rule 15(c) for an abuse of

discretion. Powers v. Graff, 148 F.3d 1223, 1226 (11th Cir. 1998). We find no

error in the district court's decision that an amendment would have been futile

---

[3] The district court also denied the motion to amend as to the non-answering defendants based on undue delay and undue prejudice, in addition to futility. Such a decision is reviewed subject to an abuse of discretion standard. Because we find that the motion to amend was properly denied as futile, we do not address whether Brewer-Giorgio's conduct constituted undue delay or whether allowing the amendment would have unduly prejudiced the answering defendants.

[4] Under Federal Rule of Civil Procedure 15(c), "[a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."

8

because Brewer-Giorgio's claim would be barred regardless of whether it related back or not.

If the claims in the amendment do not relate back to the original claims, then the new claims are indeed time-barred. The broadcast of the offending Elvis special aired on January 22, 1992. Thus, the three-year copyright statute of limitation ran on January 22, 1995. The amendment was filed on February 6, 1996, over one year after the limitations period had run.

Even if the claims do relate back, we find no abuse of discretion. If the new claims relate back to the original claims, we must consider the new claims as having been filed at the time of the original claims. NLRB v. Atlanta Metallic Casket Co., 205 F.2d 931, 937 (5th Cir. 1953).[5] In this case, had Brewer-Giorgio filed a claim for the infringement of the scripts on January 20, 1995, when she originally brought this lawsuit, the district court would not have had jurisdiction because before a plaintiff may institute a copyright infringement suit, she must register the copyright. 17 U.S.C. § 411 ("no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made"). At the time the original suit was filed, Brewer-Giorgio had not

---

[5] This Court is bound by decisions of the Fifth Circuit that were handed down on or before September 30, 1981. Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9

registered copyrights in the scripts at issue. The statute of limitations expired two days later, and the record is clear that, as of the expiration of the statute of limitations, Brewer-Giorgio still had not registered her copyrights in the scripts, as is required for a court to have jurisdiction. It is well settled in this Court that "[t]he registration requirement is a jurisdictional prerequisite to an infringement suit." M.G.B. Homes, Inc. v. Ameron Homes, Inc., 903 F.2d 1486, 1488 (11th Cir. 1990). Although a copyright need not have been registered in all cases before it may be infringed, the owner of that copyright must register the copyright before a federal court can entertain an infringement suit.[6] Thus, even if the new claims relate back to the original claims, they may not be added because the district court did not have jurisdiction to hear the new claims at the time the original claims were filed.[7] See Reynolds v. United States, 748 F.2d 291, 293 (5th Cir. 1984) (holding

---

[6] Brewer-Giorgio argues that she filed applications to register her copyrights in the scripts at issue on January 26, 1996, before she filed her amendment to the complaint. Thus, she argues that she met the jurisdictional requirement of 17 U.S.C. § 411. Her argument, however, is misplaced. Although this argument would have viability had the statute of limitations not expired, as we noted above, the statute of limitations on copyrights infringements stemming from the broadcast had expired a year earlier.

[7] During oral argument, counsel for Brewer-Giorgio, relying on Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962), suggested that the filing of a lawsuit tolls a statute of limitations even where the court lacks jurisdiction to hear that suit. We find Goldlawr inapplicable to the instant situation. Goldlawr concerned a suit that was filed within the statute of limitations, albeit in an improper venue. The case was thereafter transferred from the court in which it had been filed to a court of proper venue, in accordance with 28 U.S.C. § 1406(a). The Court reasoned that Congress clearly intended by enacting Section 1406(a) that a case filed in an improper venue should be transferred rather than dismissed, because dismissal would have precluded re-filing when the statute of limitations had expired. Id. at 467. In this case, the claim pertaining to the scripts had not been filed

10

that it is proper to disallow an amendment which was filed "on a date on which the court lacked jurisdiction" and "related back to a date on which the court also lacked jurisdiction").

Because Brewer-Giorgio did not meet the jurisdictional prerequisite of registering her copyright in the scripts before the expiration of the statute of limitations, she may not now add those claims because they would be barred either by the jurisdictional requirements of 17 U.S.C. § 411 or by the statute of limitations in 17 U.S.C. § 507(b).

AFFIRMED.

---

within the statute of limitations period in any court. Thus, Goldlawr is not applicable where the plaintiff did not timely misfile in an improper venue but failed to meet statutory jurisdictional prerequisites. Unlike in the case of venue, Congress has not enacted a statute allowing courts to compensate for such a failure.