**Richard A. BORGNER, D.D.S., and the American Academy of Implant Dentistry, Plaintiffs,**

**v.**

**Doug COOK, in His Official Capacity as Director, State of Florida, Agency for Health\*Care Administration, and Faustino Garcia, D.M.D, Solomon G. Brotman, D.D.S., Phil J. Levine, D.D.S., Charles L. Ross, D.D.S., Edward R. Scott, II, D.M.D., Carol E. Williamson, D.M.D., Jacqueline B. McDonough, R.D.H., Irene J. Stavros, Hilda H. Genco, Mary L. McDonald, in Their Official Capacities, as Members of the Florida Board of Dentistry, Defendants.**

No. 4:97cv93-WS.

United States District Court, N.D. Florida, Tallahassee Division.

July 16, 1998.

Marilyn Josephine Marshall, Marilyn J. Marshall PA, Tallahassee, FL, Frank R. Recker, Frank R. Recker & Assocd Co LPA, Cincinnati, OH, for Richard A. Borgner, American Academy of Implant Dentistry, plaintiffs.

John J. Rimes, Attorney General's Office, Tallahassee, FL, for Douglas Cook, Peter A. Keller, Faustino Garcia, Solomon G. Brotman, Phil J. Levine, Charles L. Ross, Edward R. Scott, II, Carol E. Williamson, Jacqueline B. McDonough, Irene J. Stavros, Hilda H. Genco, Mary L. McDonald, defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

STAFFORD, Senior District Judge.

In this action for declaratory and injunctive relief, the plaintiffs, Richard Borgner, D.D.S., and the American Academy of Implant Dentistry (collectively "Plaintiffs"), ask the court to declare unconstitutional, and to enjoin the defendants from enforcing, section 466.0282, Florida Statutes. Such section prohibits Florida licensed dentists from advertising membership in, or specialty recognition by, an accrediting organization that is not recognized or accredited by the American Dental Association. Plaintiffs contend that section 466.0282 violates the First Amendment to the Amendment to the United States Constitution, specifically the First Amendment right to freedom of commercial speech.

Before the Court at this time is Plaintiffs' motion for summary judgment (doc. 49). The defendants have responded (docs 61–63) to the motion, and the parties have been advised (doc. 77) that the motion would be taken under advisement as of a date certain.

### I.

The American Academy of Implant Dentistry ("AAID") is a national dental organization whose member dentist may earn credentials ("Fellow" and "Associate Fellow") in the field of implant dentistry upon satisfying certain experiential, educational, and testing requirements. At the time this case was filed, AAID had approximately one hundred seventy-two (172) dentist-members who practiced dentistry in the State of Florida.

AAID sponsors a national certifying board, the American Board of Oral Implantology/Implant Dentistry ("ABOI/ID"). The ABOI/ID issues the credential of "Diplomate" upon a dentist's fulfillment of certain educational, experiential and examination requirements. When this suit was filed, approximately one hundred twenty-five dentists nationwide had attained the status of "Diplomate" of the ABOI/ID.

Richard Borgner ("Borgner") is a Florida licensed dentist who concentrates his practice in the field of implant dentistry. As a credentialed member of AAID, Borgner has advertised in the past, and wants to continue advertising in the future, (1) his membership in AAID; (2) his status as "Fellow" of AAID; and (3) his status as "Diplomate" of ABOI/ID.

In August, 1994, the Florida Board of Dentistry (the "Board") issued a final order on a petition filed by Frank R. Recker, D.D.S., for a declaratory statement as to the ability of AAID members to advertise their status as fellows of the AAID and diplomates of the ABOI/ID. Doc. 1, Ex. D. In its order, BOD 94–01DS, the Board reported as a finding of fact that "the AAID and the ABOI/ID are bona fide organizations that credential dentists in the area of implant dentistry." *Id.* at 2. The Board also reported as a conclusion of law that the Florida statutes and/or administrative rules then in effect permitted a dentist to advertise his or her "Fellow" status in the AAID as well as his or her "Diplomate" status in the ABOI/ID so long as the advertisement did not imply to the public that the advertising dentist had obtained specialty status. *Id.*

Effective October 1, 1996, the Florida Legislature nullified the Board's 1994 order, BOD 94–01 DS, when it amended Florida law to prohibit dentists in Florida from advertising membership in, or specialty recognition by, organizations not recognized or accredited by the American Dental Association. Fla. Stat., § 466.0282(1) (1996). The Florida Legislature explained as follows:

The purpose of this section is to prevent a dentist from advertising membership in an organization which may be perceived by the public as recognizing or accrediting specialization in an area of dentistry that is not recognized or accredited by the American Dental Association.... The Legislature finds that dental consumers rely on recognition by the American Dental Association as proof that an area of dentistry is recognized as a legitimate dental specialty by other dentists and that the accrediting or recognizing organization of that specialty is bona fide. The Legislature also finds not only that the American Dental Association...has the administrative staff and financial resources necessary to investigate and thoroughly evaluate whether an accrediting or recognizing organization is ca-

pable of accurately determining whether an area of dentistry is uniquely defined and educationally disciplined so as to meet a substantial public need for clinical treatment, but also that this accreditation process is the least restrictive means available to ensure that consumers are not misled about whether an area of dentistry is a legitimate specialty.

Fla. Stat. § 466.0282(2) (1996).

The special areas of dental practice currently recognized by the American Dental Association ("ADA") are: dental public health, endodontics, oral and maxillofacial pathology, oral and maxillofacial surgery, orthodontics and dentofacial orthopedics, pediatric dentistry, periodontics, and prosthodontics. Implant dentistry has *not* been approved as a dental specialty by the ADA, nor has AAID or ABOI/ID received ADA recognition as a dental specialty accrediting organization. Consequently, the effect of section 466.0282(1)—as interpreted by the Florida Board of Dentistry—is to altogether prohibit Florida dentists from advertising their membership in and/or specialty recognition by AAID and ABOI/ID.

Plaintiffs contend that, by placing a categorical ban on all advertising of specialty credentials by dentists whose credentials are not ADA-approved, section 466.0282 blocks the general public's access to truthful and accurate commercial information. Plaintiffs argue such a blockage, or ban, is inconsistent with the free speech guarantees of the First Amendment of the United States Constitution and is contrary to decisions of the United States Supreme Court.

## II.

In *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976), the United States Supreme Court firmly established that commercial speech enjoys the protections of the First Amendment. The Court was careful to explain, however, that the protections are limited to truthful, non-misleading commercial speech. Commercial speech or advertising which is false, deceptive, or misleading is not so protected and may be prohibited entirely. *Virginia Bd. of Pharmacy,* 425 U.S. at 771–772, 96 S.Ct. 1817.

The Court acknowledged that state regulation of advertising by physicians and lawyers may be necessary because physicians and lawyers "render professional services of almost infinite variety and nature, with the consequent enhanced possibility for confusion and deception." *Virginia Bd. of Pharmacy,* 425 U.S. at 773 n. 25, 96 S.Ct. 1817. Nonetheless, in *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court extended the commercial speech protections announced in *Virginia Board of Pharmacy* to the regulation of advertising by lawyers. Later, writing for a unanimous court in *In re R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), Justice Powell summarized the standards applicable to claims involving attorney advertising as follows:

> Truthful advertising related to lawful activities is entitled to the protections of the First Amendment. But when the particular content or method of the advertising suggests that it is inherently misleading or when experience has proved that in fact such advertising is subject to abuse, the States may impose appropriate restrictions. Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, e.g., a listing of areas of practice, if the information also may be presented in a way that is not deceptive...Although the potential for deception and confusion is particularly strong in the context of advertising professional services, restrictions upon such advertising may be no broader than reasonably necessary to prevent the deception.

*In re R.M.J.,* 455 U.S. at 203, 102 S.Ct. 929.

In *Peel v. Attorney Registration and Disciplinary Comm'n of Illinois,* 496 U.S. 91, 110 S.Ct. 2281, 110 L.Ed.2d 83 (1990), the Court held that Gary Peel's use of the designation "Certified Civil Trial Specialist by the National Board of Trial Advocacy" was neither actually nor inherently misleading. The Court explained that "[a] claim of certification is not an unverifiable opinion of the ultimate quality of a lawyer's work or a promise of success...but is simply a fact,

albeit one with multiple predicates, from which a consumer may or may not draw an inference of the likely quality of an attorney's work in a given area of practice." *Peel,* 496 U.S. at 101, 110 S.Ct. 2281. Indeed, as noted by the Court, certification was not the only verifiable fact in Peel's case; the predicate requirements for certification by the National Board of Trial Advocacy ("NBTA") were verifiable facts as well. Furthermore, there was no suggestion that the NBTA issued certificates to lawyers indiscriminately, and there was no evidence that a potential client or person was in fact misled or deceived by Peel's advertisement. Absent such evidence, the Court concluded that Peel's advertisement of his certification was not misleading or deceptive on its face.

The Court acknowledged that statements of "certification" as a "specialist," even though truthful, may not be fully understood by some readers. The Court nevertheless concluded that "concern for the *possibility* of deception was not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Peel,* 496 U.S. at 111, 110 S.Ct. 2281 (emphasis added). The Court, therefore, held that, under the First Amendment, the State of Illinois could not justify a prophylactic ban against all advertisement of Peel's specialty certification on the basis that the information was potentially misleading.

The Court later extended the lessons in *Peel* to a case involving a lawyer, Silvia Ibanez ("Ibanez"), who advertised her credentials as a Certified Public Accountant ("CPA") and a Certified Financial Planner ("CFP").[1] *Ibanez v. Florida Dept. of Business and Professional Regulation, Bd. of Accountancy,* 512 U.S. 136, 114 S.Ct. 2084, 129 L.Ed.2d 118 (1994). Ibanez was reprimanded by the Florida Board of Accountancy (the "Board of Accountancy") for engaging in "false, deceptive, and misleading" advertising. As to Ibanez's use of the CFP designation, the Board of Accountancy argued that any designation using the term "certified" to

refer to a certifying organization other than the Board of Accountancy itself or an organization approved by the Board of Accountancy "inherently mislead[s] the public into believing that state approval and recognition exists." *Ibanez,* 512 U.S. at 142, 114 S.Ct. at 2088, 129 L.Ed.2d at 125. The Court rejected the Board of Accountancy's argument, noting that such argument was "difficult to maintain in light of *Peel." Ibanez,* 512 U.S. at 144, 114 S.Ct. at 2089, 129 L.Ed.2d at 127. The Court also rejected the Board of Accountancy's argument that use of the CFP designation was potentially misleading, entitling the Board of Accountancy to enact measures short of a total ban to prevent deception or confusion. The Court explained that if the " 'protections afforded commercial speech are to retain their force'... we cannot allow rote invocation of the words 'potentially misleading' to supplant the Board's burden to 'demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree.' " *Ibanez,* 512 U.S. at 143, 114 S.Ct. at 2089, 129 L.Ed.2d at 128 (cites omitted). The Board of Accountancy having failed to point to any real—as opposed to hypothetical—harm, the Court concluded that the Board of Accountancy's "concern about the possibility of deception in hypothetical cases is not sufficient to rebut the constitutional presumption favoring disclosure over concealment." *Ibanez,* 512 U.S. at 145, 114 S.Ct. at 2090, 129 L.Ed.2d at 127–128 (quoting *Peel,* 496 U.S. at 111, 110 S.Ct. 2281); *see also Edenfield v. Fane,* 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993) (striking down Florida ban on CPA solicitation where Board of Accountancy presented neither studies suggesting that personal solicitation created the dangers the Board of Accountancy claimed to fear nor anecdotal evidence validating the Board of Accountancy's suppositions); *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 648–649, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (striking down restrictions on attorney advertising where "State's arguments amount to little

---

1. A private organization, the Certified Financial Planner Board of Standards, authorizes use of the trademarked designation "Certified Financial Planner" to persons who satisfy certain core educational requirements, who receive a passing score on a certification examination, who com-

plete a planning-related work experience requirement, who agree to abide by the CFP Code of Ethics and Professional Responsibility, and who complete an annual continuing education requirement.

more than unsupported assertions" without "evidence or authority of any kind").

While a number of courts, including the Supreme Court, have considered the matter of advertising by attorneys and accountants, it appears that few courts have addressed the issue of advertising by dentists. Indeed, after searching both state and federal databases, this court found only one such case, namely *Parker v. Commonwealth of Kentucky, Board of Dentistry*, 818 F.2d 504 (6th Cir.1987). In *Parker*, the Sixth Circuit determined that "[a]lthough there are distinctions between the professions of dentistry and law, we do not detect that the description of services performed by dentists is any more inherently or potentially misleading than those performed by lawyers." *Parker*, 818 F.2d at 510. The Sixth Circuit accordingly applied traditional First Amendment commercial speech analysis, as articulated in the attorney advertising cases, in the context of dental advertising.

The Court in *Parker* considered a Kentucky statute that prohibited general dental practitioners from holding themselves out to the public as specialists, or as being "especially qualified," in a particular branch of dentistry. As a general dental practitioner, Stanley Parker ("Parker") was permitted under Kentucky law to perform services in all recognized branches of dentistry, including orthodontia, but he was nevertheless prohibited from using the words "orthodontics," "braces," "brackets," and similar terms in advertising his services. When Parker in fact placed an advertisement in the Yellow Pages listing, as some of his services, "Orthodontics with Clear & Metal Brackets," and "Orthodontics without Braces," the state Board of Dentistry instituted disciplinary proceedings against him. On appeal, the Board of Dentistry argued that Parker's use of such words as "orthodontics" and "braces" could actually or potentially mislead the general public into believing that he was a "specialist" in the area of orthodontics. The Sixth Circuit, however, found that Parker's advertisement—a truthful description of services that he was permitted under Kentucky law to perform—was *not* inherently misleading. While willing to assume that Parker's advertisement could be potentially misleading, the Sixth Circuit nonetheless concluded

that Kentucky's out-right ban on the use of specific, non-deceptive terms could not be justified under the Constitution or Supreme Court precedent.

■ Like the defendants in *Peel, Ibanez,* and *Parker,* the defendants in this case bear a heavy burden to justify the complete ban placed on certain aspects of commercial speech, specifically on the advertisement of a dental practitioner's membership in AAID and credentials awarded by AAID and ABOI/ID. In shouldering their burden, the defendants may not rely on speculation and conjecture but must produce specific evidence to demonstrate that the harms they recite are real and substantial and that the ban "directly and materially advances a substantial state interest in a manner no more extensive than necessary to serve that interest." *Ibanez,* 512 U.S. at 142, 114 S.Ct. at 2088, 129 L.Ed.2d at 126. Plaintiffs suggest—and the court agrees—that, given their burden, the defendants have not produced sufficient evidence to survive Plaintiffs' motion for summary judgment.

### III.

■ It is undisputed that Richard A. Borgner ("Borgner") is a credentialed member of the AAID who has been awarded the status of "Fellow" of AAID as well as the status of "Diplomate" of ABOI/ID. Like the credentials at issue in *Peel* and *Ibanez,* Borgner's credentials constitute verifiable facts, as do the predicate requirements for those credentials. The defendants nonetheless seek to distinguish this case from *Peel* and *Ibanez.*

The defendants first state that specialty certifications in dentistry "involve assertions of special expertise on the part of the dentist in scientific fields which are much more esoteric to the average lay consumer of dental services than terms such as 'certified trial lawyer' and 'certified financial planner' are to sophisticated consumers of legal and accounting services." Doc. 61 at 7. Record support for the defendants' conclusory statement, however, is nonexistent. The defendants have cited no studies and have produced no evidence to support their suggestion that consumers of dental services—as opposed to

consumers of legal and financial planning services—are more likely to be misled by secondary level certifications. Nor have they explained why, in considering the difference between consumers, they compare the "average lay" dental consumer to the "sophisticated" consumer of legal or financial planning services.

The defendants next suggest that, unlike the state respondents in *Peel* and *Ibanez,* the state defendants in this case have produced "anecdotal" evidence to support their argument that members of the public would be confused if Borgner were permitted to advertise his membership in, and credentialing by, non-ADA, approved organizations. This "anecdotal" evidence consists of the affidavits of (1) Robert T. Ferris, D.D.S., a diplomate of the American Board of Periodontology, a past chairperson of the Florida Board of Dentistry, the president-elect of the Florida Dental Association, and a past member of the ADA Council on Dental Education/Commission on Dental Accreditation ("ADA Council"); and (2) H. Fred Varn, a past Executive Director of the Florida Board of Dentistry.

As a past Executive Director of the Florida Board of Dentistry, Mr. Varn states in his affidavit that "it is his opinion and belief that a substantial portion of the consumers of dental services in Florida believe that dentists who hold themselves out to the public as 'specialists,' as being 'board certified,' or as limiting their practice to a particular type of practice have in fact obtained specialty certification from the State of Florida or a specialty organization approved by the State of Florida." Doc. 62, Ex. 2 at ¶ 10. The defendants admit, however, that they have no empirical evidence to support Mr. Varn's opinion.

As a dental practitioner whose practice is limited to the ADA-approved specialty of periodontics, Dr. Ferris states in his affidavit that

> it is my opinion that confusion exists among dental consumers concerning the relation between legitimate dental specialties and other dental areas with which the consumer must deal, such as dental practice settings, dental methodologies, and generic areas of dental practice. These other areas should not be equated with—dental specialties because they usually only

deal with a technique or an instrument (implants, lasers, etc.) and not with a defined area of health care practice.

Doc. 62, Ex. 1 at ¶ 10. Again, the defendants have not come forward with any empirical evidence to support Dr. Ferris's opinion. They have produced not one bit of anecdotal evidence concerning Dr. Borgner's patients or potential patients, not one report of a complaint or inquiry about his services or his advertisements, not one report of any person's being deceived, misled, or confused by any dentist's AAID or ABOI/ID certifications, and not one document or study to support the proposition that dental consumers have been misled by any credential issued by any dental accrediting organization in any area of dentistry not recognized by the ADA as a specialty area of dentistry.

As a past member of the ADA Council, Dr. Ferris also states that AAID sought and was denied approval of implant dentistry as a recognized dental specialty from the ADA Council on at least one occasion. Dr. Ferris, a periodontist, says:

> [T]he ADA Council found that AAID failed to meet the Criterion of Recognition which states that the scope of a proposed new specialty cannot readily coincide with the scope of other recognized dental specialties. The ADA Council determined that AAID's proposed specialty in implant dentistry was already being provided adequately by other qualified dental practitioners such as Periodontists, Oral Surgeons, Prosthodontists, and General Dentists. Because these other specialists had been performing the techniques of implant dentistry with a high level of skill and had gained expertise in the performance of implant dentistry, the ADA Council determined that AAID does not meet this Criterion of Recognition requirement.

Doc. 62, Ex. 1 at ¶ 19. Dr. Ferris does not state that implant dentistry is an illegitimate or unrecognized area of dental practice. He does not state that dentists who are *not* ADA-recognized specialists are unqualified to perform implant dentistry. He does not state that AAID or ABOI/ID is a sham or that either organization awards certifications

indiscriminately. In essence, Dr. Ferris says that AAID was denied ADA-recognition as a dental specialty credentialing organization largely because other qualified dental practitioners—including periodontists like himself—are "equally qualified and often more qualified to perform the same procedures as the dental practitioners AAID wishes to have certified as implant specialists." Doc. 62, Ex. 1 at ¶ 20.

The defendants have fallen woefully short of convincing this court that dental consumers will be misled if Borgner is permitted to advertise both his membership in AAID as well as his credentialed status with AAID and ABOI/ID. While the defendants support their assertions with little more than speculation and conjecture about the possibility of deception in hypothetical cases, they provide no specific evidence that suggests, much less demonstrates, that Borgner's advertisement will create the danger of deception they claim to fear. Given a record devoid of the type of evidence needed for the defendants to survive constitutional review and to successfully rebut the presumption favoring disclosure over concealment, the court finds that Plaintiffs are entitled to summary judgment.

Accordingly, it is ORDERED:

1. Plaintiffs' motion for summary judgment (doc. 49) is GRANTED.

2. Section 466.0282 is DECLARED unconstitutional to the extent it prohibits Borgner from advertising his membership in AAID and his credentialed status in AAID and ABOI/ID, and the defendants are ENJOINED from enforcing section 466.0282 against Borgner for advertising his membership in AAID and his credentialed status in AAID and ABOI/ID.

3. The clerk is directed to enter judgment in Plaintiffs' favor, with costs taxed to the defendants.