[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 06, 2002
THOMAS K. KAHN
CLERK

No. 01-12098

_____

D. C. Docket No. 99-00211-CV-4-WS

RICHARD A. BORGNER,
AMERICAN ACADEMY OF IMPLANT DENTISTRY,

Plaintiffs-Appellees,

versus

ROBERT G. BROOKS, FLORIDA BOARD OF
DENTISTRY,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Florida

_____

**(March 6, 2002)**

Before WILSON, HILL and FAY, Circuit Judges.

WILSON, Circuit Judge:

This case presents an issue of first impression: whether the disclosure

provision of Florida Statutes section 466.0282, which requires Florida-licensed

dentists to include disclaimers when advertising specialty areas not recognized by the state and when advertising credentials from non-state approved credentialing organizations, places an unconstitutional ban on commercial speech. The district court found that it does, and granted summary judgment in favor of Dr. Richard A. Borgner, D.D.S., and the American Academy of Implant Dentistry (AAID) on their challenge to the statute's constitutionality. After reviewing section 466.0282 under the test articulated in *Central Hudson Gas and Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), we find this statute to be constitutional under the First Amendment and reverse the summary judgment.

BACKGROUND

Borgner is a Florida-licensed dentist who practices general dentistry with an emphasis in implant dentistry in St. Petersburg, Florida.[1] In light of his specialty, Borgner advertises himself as a member of the AAID, a Fellow of the AAID, and a Diplomate of the AAID's certifying board, the American Board of Oral Implantology/Implant Dentistry (ABOI/ID). The AAID is a national dental organization whose members may earn credentials – specifically, Associate Fellow and Fellow – in the field of implant dentistry. The organization's primary purpose,

_____

[1] Implant dentistry is explained by the AAID in *Bingham v. Hamilton*, 100 F. Supp. 2d 1233, 1234 (E.D. Cal. 2000), as "the placing of devices for attaching artificial replacement teeth to the same bones to which natural teeth are anchored."

goal and objective is the enhancement of its members' knowledge, skill, and expertise in the field of implant dentistry. Implant dentistry and the organizations affiliated with this specialty, however, are not recognized by the American Dental Association (ADA) or the Florida Board of Dentistry (the Board).[2]

Prior to 1998, section 466.0282 prohibited Florida-licensed dentists from advertising a specialty practice, which included implant dentistry. This prohibition led Borgner to challenge the constitutionality of this statute, as it applied to implant dentistry. The district court found the statute unconstitutional to the extent that it banned all advertising of affiliation with or certification by non-ADA recognized dental organizations. *Borgner v. Cook*, 33 F. Supp. 2d 1327, 1333 (N.D. Fla. 1998) (*Borgner I*). At the urging of the Board, the Florida legislature amended section 466.0282, adding in pertinent part a provision that allows Florida-licensed dentists to advertise a specialty practice or credential accredited by a bona fide credentialing organization other than the ADA or the Board, but requires that the advertisement disclose that the indicated specialty or credentialing organization is not state-approved. Borgner, again, brought an action challenging the statute and again prevailed. Specifically, the district court granted summary judgment in favor

---

[2] The special areas of dental practice currently recognized by the ADA are: dental public health, endodontics, oral and maxillofacial pathology, oral and maxillofacial surgery, orthodontics and dentofacial orthopedics, pediatric dentistry, periodontics, and prosthodontics.

of Borgner and the AAID, and declared section 466.0282 unconstitutional to the extent it prohibits Borgner from advertising membership in the AAID and his status in the AAID and ABOI/ID and to the extent that it prohibits him from representing to the public that his practice is limited to implant dentistry without also incorporating a disclosure statement.

DISCUSSION

We review summary judgments de novo, applying the same standards as the district court and reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Parks v. City of Warner Robins*, 43 F.3d 609, 612–13 (11th Cir. 1995); *Warren v. Crawford*, 927 F.2d 559, 561–62 (11th Cir. 1991). Whether state restrictions on commercial speech are constitutional is an issue subject to de novo review. *Mason v. Fla. Bar*, 208 F.3d 952, 955 (11th Cir. 2000).

Before analyzing section 466.0282 under the *Central Hudson* test, we must first determine whether the statute, taken as a whole, is clear as far as what is required and what is prohibited. *E.E.O.C. v. Total Sys. Serv., Inc.*, 240 F.3d 899, 904 (11th Cir. 2001); *St. Mary's Hosp., Inc. v. Phillipe*, 769 So. 2d 961, 967 (Fla. 2000) (per curiam) ("[A] statute must be construed in its entirety . . . ."); *Young v. Progressive Southeastern Ins. Co.*, 753 So. 2d 80, 84 (Fla. 2000) ("[A]ll parts of a

4

statute must be read *together* in order to achieve a consistent whole," and "[w]here possible, courts must give effect to *all* statutory provisions and construe related statutory provisions in harmony with one another."). After reading section 466.0282 in its entirety, and taking into account all of its four subsections, we find the statute's meaning to be plain and unambiguous on its face.

Subsection (1) of the statute lists the necessary prerequisites for a dentist to hold himself out as a specialist or as a member of an organization that recognizes the specialty: the dentist must have completed a specialty education program approved by the American Dental Association (ADA), and this specialty must be recognized by the ADA.[3] Subsection (2) explains how dentists can still represent to the public that their practice is limited to a specific area of dentistry if their specialty is not authorized under subsection (1): the dentist must have attained membership in or attained credentials from an accrediting organization that is

---

[3] (1) A dentist licensed under this chapter may not hold himself or herself out as a specialist, or advertise membership in or specialty recognition by an accrediting organization, unless the dentist:
    (a) Has completed a specialty education program approved by the American Dental Association and the Commission on Dental Accreditation and:
        1. Is eligible for examination by a national specialty board recognized by the American Dental Association; or
        2. Is a diplomate of a national specialty board recognized by the American Dental Association; or
    (b) Has continuously held himself or herself out as a specialist since December 31, 1964, in a specialty recognized by the American Dental Association.

Fla. Stat. § 466.0282(1).

approved by either the Board or the ADA as a bona fide organization for such an area of dental practice (in order to receive Board or ADA approval, the organization must require dentists to meet several conditions).[4] If a dentist's specialty does not fit into subsection (1), and if a dentist is not a member or lacks credentials in an organization under subsection (2), then subsection (3) applies. Subsection (3) allows dentists to advertise their practice emphasis, despite the lack of ADA recognition, if they include a disclaimer explaining that this specialty is not recognized by the ADA or the Board. Moreover, if the dentist wishes to advertise membership in a specialty organization not approved by the ADA or the Board, then the dentist may also advertise membership in this organization (or the

---

[4] (2) A dentist licensed under this chapter may not represent to the public without appropriate disclosure that his or her practice is limited to a specific area of dentistry other than a specialty area of dentistry authorized under subsection (1), unless the dentist has attained membership in or has otherwise been credentialed by an accrediting organization which is recognized by the board as a bona fide organization for such an area of dental practice. In order to be recognized by the board as a bona fide accrediting organization for a specific area of dental practice other than a specialty area of dentisty authorized under subsection (1), the organization must condition membership or credentialing of its members upon all of the following:

    (a) Successful completion of a formal, full-time advanced education program that is affiliated with or sponsored by a university-based dental school and is:
        1. Beyond the dental degree;
        2. At the graduate or postgraduate level; and
        3. Of at least 12 months in duration.
    (b) Prior didactic training and clinical experience in the specific area of dentistry which is greater than that of other dentists.
    (c) Successful completion of oral and written examinations based on psychometric principles.

Fla. Stat. § 466.0282(2).

credentials he/she has received in this organization) if the dentist includes a disclaimer explaining this organization is not recognized as a bona fide specialty accrediting organization by the ADA or the Board.[5]

Finally, subsection (4) explains the purpose behind the statute: the Florida Legislature does not want the public to be misled regarding the specialization and particular credentials of dentists. The Legislature wants the public to be informed that some dental specialties and some organizations recognizing these specialties are not sanctioned by the ADA or the Board. The Legislature finds including disclosure statements in these particular advertisements is the least restrictive means available to ensure consumers will not be misled.[6]

---

[5] (3) Notwithstanding the requirements of subsections (1) and (2), a dentist who lacks membership in or certification, diplomate status, or other similar credentials from an accrediting organization approved as bona fide by either the American Dental Association or the board may announce a practice emphasis in any other area of dental practice if the dentist incorporates in capital letters or some other manner clearly distinguishable from the rest of the announcement, solicitation, or advertisement the following statement: "...(NAME OF ANNOUNCED AREA OF DENTAL PRACTICE)... IS NOT RECOGNIZED AS A SPECIALTY AREA BY THE AMERICAN DENTAL ASSOCIATION OR THE FLORIDA BOARD OF DENTISTRY." If such an area of dental practice is officially recognized by an organization which the dentist desires to acknowledge or otherwise reference in the dentist's announcement, solicitation, or advertisement, the same announcement, solicitation, or advertisement shall also state prominently: "...(NAME OF REFERENCED ORGANIZATION)... IS NOT RECOGNIZED AS A BONA FIDE SPECIALTY ACCREDITING ORGANIZATION BY THE AMERICAN DENTAL ASSOCIATION OR THE FLORIDA BOARD OF DENTISTRY."

Fla. Stat. § 466.0282(3).

[6] (4) The purpose of this section is to prevent a dentist from advertising without appropriate disclosure membership in an organization which may be perceived by the public as recognizing or accredited specialization or other unique competencies in an area of dentistry that

Therefore, after examining the statute in its entirety, we find section 466.0282 does not completely ban advertising of membership or credentials in the AAID and ABOI, as the district court order suggests. Subsection (3), when read in conjuction with subsections (1) and (2), clearly permits advertisement of an implant dentistry specialty and/or AAID and ABOI membership and credentials so long as these statements are accompanied by the appropriate disclaimers. Keeping this statutory construction in mind, we must now decide whether the disclaimer requirement in subsection (3) imposes an unconstitutional burden on Borgner's First Amendment rights.

In *Central Hudson*, the Supreme Court established that while commercial speech enjoys some First Amendment protection, the Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." 447 U.S. at 563. Since the First Amendment is concerned only with

---

is not recognized or accrediting by the American Dental Association or the board in accordance with this section. The purpose of this section is also to prohibit a dentist from advertising a specialty or other area of dental practice without appropriate disclosure unless the special competencies held by the dentist satisfy the requirements of subsection (1) or subsection (2). The Legislature finds that dental consumers can reasonably rely on these requirements as satisfactory evidence of a dentist's attainment of meaningful competencies in the specialty or other bona fide areas of dental practice advertised. The Legislature also finds that this process for the recognition of dental specialties and other bona fide areas of dental practice is the least restrictive means available to ensure that consumers are not misled about a dentist's unique credentials.

Fla. Stat. § 466.0282(4).

8

"the informational function of advertising," state regulations of commercial messages that do not accurately inform the public about lawful activity are valid. *Id.* The standard used in evaluating the constitutionality of government restrictions on commercial speech comes from *Central Hudson*, which set out a four-step process for assessing the constitutionality of a restriction on commercial speech:

> At the outset, we must determine whether the expression is protected by the First Amendment. [1] For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [2] Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether [3] the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than necessary to serve that interest.

*Id.* at 566. Our review of the summary judgment will focus on whether the court properly applied the *Central Hudson* test.

With respect to the first prong of the test, the Supreme Court has, even prior to *Central Hudson*, drawn a distinction between "potentially" and "inherently" misleading advertising. *In re R.M.J.*, 455 U.S. 191, 203 (1982)*; Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 (1976). Inherently misleading or false advertising is not considered commerical speech, and may be regulated by the state at will. *In re R.M.J.*, 455 U.S. at 203. However, advertising that is only potentially misleading cannot be restricted unless the other

9

three prongs of the *Central Hudson* test are met. *See Mason*, 208 F.3d at 955. In the instant case, the Board concedes that the relevant expression, Borgner's proposed advertisement, is only potentially misleading advertising, and is thus commercial speech subject to the latter three prongs of the *Central Hudson* test.

The second prong of the *Central Hudson* test requires the government to articulate a "substantial" interest in regulating Borgner's advertisement. *Central Hudson*, 477 U.S. at 566. The Board argues that the state has an interest in regulating the dental profession, and in establishing uniform standards for certification, and to that end, the state also has an interest in ensuring that dentists' advertisements are not misleading to consumers with respect to those standards. Courts have previously noted that the state has a general interest in regulating the professions, and that "they have broad power to establish standards for licensing practitioners." *Fla. Bar v. Went for It, Inc.*, 515 U.S. 618, 625 (1995). This interest carries with it a responsibility to ensure that professional advertisements do not mislead consumers about which practitioners enjoy state approval and recognition. Therefore, Florida's desire to regulate dentists' advertisements due to its interest in "protecting its citizens from unqualified and incompetent health care professionals" is certainly valid, and thereby satisfies the second prong of the *Central Hudson* test. *Strang v. Satz*, 884 F. Supp. 504, 508 (S.D. Fla. 1995).

The third part of the *Central Hudson* test has been described as its

"penultimate prong." *Mason*, 208 F.3d at 956. This portion of the test requires the

government to "demonstrate that the challenged regulation advances the

Government's interest in a direct and material way." *Fla. Bar*, 515 U.S. at 625.

That burden "is not satisfied by mere speculation or conjecture; rather, a

governmental body seeking to sustain a restriction on commercial speech must

demonstrate that the harms it recites are real and that its restriction will in fact

alleviate them to a material degree." *Rubin v. Coors Brewing Co.*, 514 U.S. 476,

487 (1995). The district court held that the Board could not meet this burden in the

instant case, because it could not show any "identifiable harm" that would come

from Borgner's proposed advertisement.

Courts have generally required the state to present tangible evidence that the

commercial speech in question is misleading and harmful to consumers before they

will find that restrictions on such speech satisfy *Central Hudson*'s third prong. *See*

*Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 147 (1994)

(striking down a state regulation for failure to back up the concern that the speech

would mislead rather than inform); *Peel v. Attorney Registration & Disciplinary*

*Comm'n of Ill.*, 496 U.S. 91, 108–09 (1990) (rejecting the claim that certain speech

was misleading for lack of empirical evidence). The Board argues it has presented

11

tangible evidence in the form of two telephone surveys to demonstrate that the restriction on Borgner's advertising directly addresses an actual harm -- specifically, that consumers would think Borgner's credentials were recognized by the state, a misleading assumption that the regulation in question is designed to rectify.

Survey data is certainly one way to prove the existence of an identifiable harm. *Fla. Bar*, 515 U.S. at 626–28; *Bingham v. Hamilton*, 100 F. Supp. 2d 1233, 1240 (E.D. Cal. 2000). If the survey results fairly show that the public is likely to assume that those advertising a dental "specialty" are in fact certified by the state in that specialty, the Board has a credible case that its regulation targets an actual harm, the harm of potentially misleading advertisements.[7]

---

[7] The district court found the Board's survey results unpersuasive. In finding no "identifiable harm" would come from Borgner's advertisement, the district court seemed to emphasize that the Board had not demonstrated that AAID and ABOI were "sham organizations" or were somehow illegitimate. This does not seem to be a relevant issue; the fact is, those organizations are not recognized by the ADA or the state of Florida, regardless of their legitimacy or standards.

The state has a substantial interest in regulating the dental profession and setting certain standards a dentist or organization must meet to enjoy state recognition. Irrespective of whether the organization is legitimate or a sham organization/diploma mill, if the organization does not meet certain state standards, then the organization will not enjoy state recognition as bona fide. The AAID is not being singled out – it simply does not meet state requirements under § 466.0282(2) and therefore, a disclaimer must be included in the advertisement.

The actual harm in this case is that consumers will be led into thinking that implant dentistry and the AAID/ABOI meet state standards for recognition, when in fact, they do not. It is not our place to question the Board's standards – AAID and ABOI, for whatever reasons, do not meet the Board's standards for recognition. Consumers believing that these organizations do meet state standards are being misled, and that is the harm the disclaimer requirement seeks to redress.

Of the two surveys conducted by the Board, we find the 2000 Study of Florida Residents Regarding Attitudes about the State of Florida's Role in Certifying Dental Specialists to be the most persuasive. The survey results, compiled from 500 completed interviews, found that nearly two-thirds (63.8%) of the survey respondents believe that dentists who advertise as being "certified by a board as a specialist in a particular area" (i.e., advertise as being certified by the AAID in implant dentistry) have been directly or indirectly certified by the State of Florida. [8]

Nearly three-fifths (57.6%) of survey respondents believe that a dentist who advertises as being a "specialist in a particular area" (i.e., advertise as being a specialist in implant dentistry) or (57.0%) "having his/her practice limited to a certain area" (i.e., advertise as having his/her practice limited to implant dentistry) has been either directly or indirectly certified by the State of Florida. [9] Moreover,

---

[8]Those respondents who believe that dentists who advertise as being certified by a board as a specialist in a particular area have been either directly or indirectly certified by the State of Florida assume that these dentists have the following qualifications: 97.8% believed the dentist had graduated from an accredited dental school, 97.2% believed the dentist had advance training, 95.1% believed the dentist passed a specialty exam, 83.4% believed the dentist was required a minimum number of years experience to practice as a specialist, and 96.2% believed the dentist was required to take continuous education.

[9]Those respondents who believe that the state has either directly or indirectly certified the dentist as a specialist assume that certain qualifications have been met: 98.1% believed the dentist had graduated from an accredited dental school, 96.8% believed the dentist had advance training, 94.1% believed the dentist passed a specialty exam, 83.8% believed the dentist was required a minimum number of years experience to practice as a specialist, and 93.3% believed

13

68.2% of the survey respondents who had visited a specialist are more likely to believe that dentists who advertise as being board certified have the approval of a Florida state agency or a national organization.

These survey results suggest that a majority of consumers are misled into thinking that a dentist who advertises as being certified by the AAID or who advertises as being a specialist of implant dentistry are somehow sanctioned by the State of Florida.

The 1998 Study of Florida Residents Regarding Dentists and Dental Specialists is less significant than the 2000 survey. However, it does reveal how important ADA certification of a dentist and his/her practice area is to the public. Composed of 1000 completed interviews, the survey was designed to determine whether lay persons would be drawn to dentists who advertise themselves as certified or as specialists by the ADA or by another organization that has not been recognized as an acceptable credentialing organization by the ADA.

According to the affidavit of Kenneth D. Wald, who has a doctorate in political science and is an expert in survey research, the survey clearly demonstrates that respondents rely heavily on the approval of the ADA in evaluating both general and specialized dentists. Eighty-one percent of all survey

the dentist was required to take continuous education.

14

respondents indicated that they were more likely to visit a dentist if they knew the dentist was certified by the ADA. And, over 80% indicated they would have more confidence in a dentist's ability if they knew the dentist was certified by the ADA, and 79% indicated they would be more willing to trust a dentist that they knew was ADA certified.

Also, in selecting dentists to perform implantation, certification by the ADA was the major reason for selection following either personal or professional recommendation. Knowing that an implant specialist was certified as a specialist by an ADA approved board was either "Very" or "Somewhat" important to more than 79.2% of respondents. In fact, 81.3% were more likely to visit a dentist certified as a specialist by the ADA.

These two surveys, taken together, support two contentions: (1) that a substantial portion of the public is misled by AAID and implant dentistry advertisements that do not explain that AAID approval does not mean ADA or Board approval; and (2) that ADA certification is an important factor in choosing a dentist/specialist in a particular practice area for a large portion of the public. From these survey results, it is clear that many consumers find it difficult to make a distinction between AAID and ADA certification, and many consumers find ADA certification of a general or specialized dentist to be extremely important. They are

thus misled by advertisements like Borgner's, which suggest to them that implant dentistry is an ADA approved specialty or that the AAID is a bona fide accrediting organization. Furthermore, this confusion concerns an issue that is relevant and compelling to a large proportion of consumers. Therefore, the Florida government is justified in regulating commercial speech in this area in such a way that information (i.e., disclaimers in advertisements) is quickly available to consumers so that they might be able to make an informed decision in selecting a dental professional.

Thus, through these surveys, the state has demonstrated the actual harm that could come from Borgner's proposed advertisements that do not include disclaimers. Without a disclaimer, consumers are led into thinking implant dentistry is a state-recognized specialty and that AAID and ABOI enjoy state approval, when in reality, they do not. The state has also shown that its disclaimer requirements will alleviate this harm because providing disclaimers will help consumers make better, more informed decisions about whom they select as their general or specialized dentist.

The fourth prong of *Central Hudson* requires an examination of "the relationship between the [state's] interests and the means chosen to serve them." *Fla. Bar*, 515 U.S. at 632. We do not require that the regulation at issue be the

least restrictive means available to accomplish the state's objective.  Rather, we merely require "a fit between the legislature's ends and the means chosen to accomplish those ends – a fit that is not necessarily perfect, but reasonable." *Bd. of Trs. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989).

We find the disclaimer requirements in the current section 466.0282, compared to the previous outright prohibitions on advertising discussed in *Borgner I*,[10] to be no more extensive than necessary to serve the state's interest in "protecting its citizens from unqualified and incompetent health care professionals," and establishing standards and uniform criteria for the certification of its licensed dentists.  *Strang*, 884 F. Supp. at 508.

Disclaimers are significantly different than outright bans on commercial speech; they are not as broad and less likely to be disproportionate to the ends the government seeks.  Courts have been more tolerant of regulations mandating disclosure requirements than they have been of regulations that impose a total ban on commercial speech.  *See Zauderer v. Office of Disciplinary Counsel of the*

---

[10]The previous *Borgner I* statute prohibited Florida licensed dentists from advertising any membership in, or specialty recognition by, an accrediting organization that is not recognized or accredited by the ADA.  The district court in *Borgner I* found that this categorical ban could not survive constitutional review.  33 F. Supp. 2d at 1331–32.  The Legislature then amended the statute so that the state no longer catgeorically prohibits this advertising, but now permits this advertising with the additional request that a dentist add a disclaimer to the advertisement if certain ADA/Board requirements are not met.

*Supreme Court of Ohio*, 471 U.S. 626, 651 (1985); *Peel*, 496 U.S. at 110–11; *Abramson v. Gonzalez*, 949 F.2d 1567, 1577 (11th Cir. 1992); *Bingham*, 100 F. Supp. 2d at 1241. According to the Court in *Zauderer*, since "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech, warning[s] or disclaimer[s] might be appropriately required . . . in order to dissipate the possibility of consumer confusion or deception." 471 U.S. at 651. In order to show that a disclaimer is disproportionate to the end the government seeks, a plaintiff needs to show that it is "unduly burdensome." *Id.* The *Zauderer* Court found the disclaimer provision in the Ohio disciplinary rule requiring attorneys to include a disclosure explaining the distinction between legal fees and legal costs to not be unduly burdensome: "we hold that an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the state's interest in preventing deception of consumers." *Id.*

The same rationale underpins our decision in *Abramson*. In *Abramson*, we held that the Florida legislature could not prohibit an unlicensed person from holding himself out or advertising as a psychologist when Florida law does not require that such person be licensed to practice psychology. 949 F.2d at 1578. However, we also suggested that a disclaimer would be a constitutional alternative, one which is less restrictive, yet sufficient to cure the potential deception and

18

ultimately serving the state's interest. *Id.* at 1577 ("To prefer more disclosure over an outright ban on particular forms of advertising not only protects the advertiser's right to communicate, but also protects the general public's interest in receiving information").

In *Peel*, the Supreme Court held that Illinois could not completely ban lawyers from holding themselves out as certified or as a specialist (i.e., advertising certification by the National Board of Trial Advocacy (NBTA)) because these statements were not actually or inherently misleading. 496 U.S. at 110. However, because the Court found disclosure, such as full disclosure regarding specialty certifications like the NBTA, to be of interest to the public and would also "encourage the development and utilization of meritorious certification programs for attorneys," the Court suggested the state require a disclaimer with any attorney advertisement that mentions certification. *Id.* at 110, 111 ("To the extent that potentially misleading statements of private certification or specialization could confuse consumers, a State might consider screening certifying organizations or requiring a disclaimer about the certifying organization or the standards of a specialty.").

In the same vein, the district court in *Bingham* found that the California State Board of Dental Examiners's enforcement policy, which prohibits licensed

19

dentists from advertising certain credentials, such as the AAID, to be unconstitutional because the Dental Board "failed to show that a total prohibition is necessary." 100 F. Supp. 2d at 1240. However, the court indicated that the Dental Board's concern "could be addressed by requiring disclosure in the advertisement that the AAID is not recognized by the Dental Board or the ADA" or "by requiring the advertisement to summarize the requirements for certification." *Id.* at 1241.

Lastly, Borgner relies entirely on *Ibanez* to support his contention that the disclaimers in section 466.0282 are "unduly burdensome." In *Ibanez,* the plaintiff, a Certified Public Accountant, wanted to include her credentials as a Certified Financial Planner (CFP) (a credential she received by a private organization not affiliated with or sanctioned by the Florida Board of Accountancy) in her advertisements to the public. 512 U.S. at 138. Yet, a rule promulgated under Florida's Public Accountancy Act prohibited the use of any "specialist" designation unless accompanied by a disclaimer. *Id.* at 138 n.1, 146. The Supreme Court found the state's disclaimer requirement to be unconstitutional because the Board failed to demonstrate the harm in advertising CFP credentials without a disclaimer and also found the detail required in the disclaimer to be "unduly burdensome." *Id.* at 146. According to the Court, the disclaimer

effectively ruled out "notation of the 'specialist' designation on a business card or letterhead, or in a yellow pages listing." *Id.* at 146–47.

However, the *Ibanez* case is distinguishable from the instant case. The disclosure in *Ibanez* required the plaintiff to state in the advertisement "that the recognizing agency [of the CFP credentials] is not affiliated with or sanctioned by the state or federal government, *and* it must set out the recognizing agency's requirements for recognition, including, but not limited to, education, experience, and testing." *Id.* at 146. Borgner argues the disclaimer is lengthy and complex and renders his affiliation with AAID and ABOI ineffective. Yet, the disclaimer in this case only requires the plaintiff to mention that implant dentistry is not a recognized specialty area by the ADA or the Board and/or that the dentist's membership in an organization that recognizes this specialty is not recognized as a specialty accrediting organization by the ADA. Compared to the disclosure requirements in *Ibanez*, the disclaimer in section 466.0282 does not require dentists to set out the AAID's requirements for recognition, such as the dentist's education, experience and testing. Therefore, based on the record in this case, specifically the impact of the disclaimer requirement in section 466.0282, and Supreme Court and our circuit precedent recommending disclaimers as an alternative to outright prohibitions on commercial speech, we find the disclaimer requirements in section 466.0282 to not

21

be especially long or burdensome, but simply an effective manner to convey necessary information to the public.

## CONCLUSION

In conclusion, we find that section 466.0282, which requires Florida-licensed dentists to include a disclaimer when advertising a specialty area not recognized by the ADA/the Board and when advertising membership in and credentials from non-state approved credentialing organizations, is constitutional under the First Amendment. The state has a substantial interest in regulating the dental profession, establishing uniform standards for certification, and in ensuring that dentists' advertisements are not misleading to consumers. The statute as it reads advances this interest in a direct and material way; survey results have shown that the public is likely to assume that those advertising a dental "specialty" are in fact certified by the state in that specialty, and including a disclaimer in these advertisements will alert the public to this misconception. Moreover, the current disclaimer requirement is the least restrictive means available to accomplish the state's objective. Therefore, we reverse the district court's grant of summary judgment for Borgner and the AAID and remand the case back to that court, with instructions to grant the Board's cross-motion for summary judgment.

REVERSED and REMANDED.

22

HILL, Circuit Judge, dissenting:

The majority upholds section 466.0282 against the claim that it unconstitutionally burdens commercial speech. Applying the *Central Hudson* test, the majority concludes that the state has a substantial interest in limiting Dr. Borgner's right to advertise his accreditation by the AAID and ABOI/AD because such advertising is potentially misleading. The majority also holds that the statute's requirement that Dr. Borgner's advertising include a disclaimer (in all capital letters or some other, undescribed, manner "clearly distinguishable" from the rest of the advertisement) that the AAID and the ABOI/AD are not "bona fide" accrediting organizations satisfies the *Central Hudson* requirement that the restriction be no more extensive than necessary. Since I disagree with both of these conclusions, I must respectfully dissent.

1.      The State's Substantial Interest

Although commercial speech is accorded First Amendment protection[1], the state has a substantial interest in protecting the public from potentially misleading advertising. *In re R.M.J.*, 455 U.S. 191, 203 (1982). The majority holds that section 466.0282 protects the public from misleading advertising by limiting the

_____

[1]*See Mason v. Florida Bar*, 208 F.3d 952, 959 (11th Cir. 200) (Hill, C.J., specially concurring).

24

ability of dentists to advertise any credentials they may have from an organization not recognized by the American Dental Association (the "ADA") or the Florida Board of Dentistry (the "Board").[2] Unless such advertising is potentially misleading,[3] then, the statute does not serve a substantial state interest and unconstitutionally burdens commercial speech.

How does Dr. Borgner's advertising of his AAID and ABOI/AD credentials mislead the public? The Board does not claim that these are not bona fide, nationally recognized organizations whose members may earn credentials reflecting extensive training and significant experience in the field of implant dentistry.[4] Indeed, the Board itself, prior to the legislature's enactment of section

---

[2]Although the majority writes that the statute permits Dr. Borgner to include his credentials from the AAID and the ABOI/ID in his advertising, I agree with the district court that the inartful construction of the statute, at a minimum, has a chilling effect on that speech, and, at worst, confers an empty right to advertise that one is accredited by an organization that the state has branded not "bona fide."

[3]The Board concedes that such advertising is not inherently misleading since Dr. Borgner is, in fact, accredited by these organizations. *See Peel v. Attorney Registration and Disciplinary Comm'n of Ill.*, 496 U.S. 91, 101 (1990) (holding that advertising of such certifications is a verifiable fact, and is not inherently misleading). The Board contends and the majority holds, however, that this advertising is potentially misleading since it may lead the consumer to believe that these organizations are recognized by the ADA or the Board. *Cf. Peel, id.* at 105, 105 n. 13 ("We reject the paternalistic assumption that the recipients of [such advertising] are no more discriminating than the audience for children's television. . . . We prefer to assume that the average consumer, with or without knowledge of the legal profession, can understand a statement that certification by a *national* organization is not certification by the *State*, and can decide what, if any, value to accord this information.")

[4]In order to qualify for AAID's "Associate Fellow" status, a dentist must (1) complete at least 300 hours of continuing education in implant dentistry, including at least 150 hours of

466.0282 in 1994, recognized both the AAID and the ABOI/ID as "bona fide orgnaizations that credential dentists in the area of implant dentistry." *Borgner v. Brooks*, 152 F. Supp. 2d 1317, 1324 (N.D. Fla. 2001). In recognizing that, under the Florida statutes then in effect, a dentist was free to advertise his certification from these organizations, the Board said nothing to suggest that such advertising might be misleading to the public. *Id.*

Now, however, the Board claims that such advertising is "misleading" because it may cause the public to believe incorrectly that the State of Florida has issued these credentials or officially approves the AAID and the ABOI/ID. The Board submitted to the district court the results of two surveys which it argued demonstrate empirically that such advertising misleads in this way.[5]

clinical implant education; (2) pass a written examination; and (3) successfully complete an oral/clinical treatment case examination. Some of the requirements for the "Fellow" credential include (1) 5 or more years of experience in the practice of implant dentistry; (2) completion of 100 hours of continuing education in implant dentistry in addition to the 300 hours required for Associate Fellow status; (3) completion of dental implant treatment of at least 50 cases; (4) successful completion of an oral examination; and (5) satisfactory presentation of ten cases to the AAID's Admissions and Credential Board. The AAID has approximately 2200 members, roughly 500 of whom have earned one or both of these credentials.

[5]In this regard, I note that these surveys were both untimely and incompletely filed. Although it was "sympathetic to Plaintiffs' complaints about Defendants' untimely disclosures," the district court declined to grant plaintiffs' motion to strike the surveys, noting that "[a]ny prejudice to Plaintiffs from lack of opportunity to meet Defendants' late-filed surveys could be cured by permitting Plaintiffs to take additional depositions at Defendants' expense." The district court did not so order, however, because it found that the surveys were "altogether insufficient to satisfy Defendants' burdens under *Central Hudson*." It appears to me, therefore, that, even if the results claimed for the surveys are sufficient to establish that the commercial speech at issue is misleading, as the majority opinion holds, this case should be remanded to the

26

The district court found this evidence "altogether insufficient" to meet the Board's substantial burden under *Central Hudson* to "demonstrate that the restrictions it places on speech target an identifiable harm and mitigate against such harm in a direct and effective manner." 152 F. Supp.2d at 1322-23 (citing *Mason v. The Florida Bar*, 208 F.3d 952, 956 (11th Cir. 2000) (state must be able to show that the regulation directly addresses an actual *harm*)). The district court held that, in the absence of any evidence that these organizations, previously recognized by the Board as bona fide, are, instead, sham organizations that make "no inquiry into the recipient's fitness," or "issue[ ] certificates indiscriminately for a price," *see Peel*, 496 U.S. at 102,[6] Dr. Borgner's advertising of his certification by these organizations produced no identifiable harm. *Id.* at 9.

The majority rejects this conclusion because, according to it, the district court focused on the "irrelevant" issue of whether these organizations are "'sham organizations or were somehow illegitimate." The majority concedes, then, that its earlier claim that "Florida's desire to regulate dentists' advertisements due to its

district court for a determination of the plaintiffs' motion to strike the surveys before the entry of final judgment.

[6]In *Peel*, the Supreme Court struck down an Illinois statute prohibiting attorneys from advertising their certification by National Board of Trial Advocacy (the "NBTA") where there was no showing that the NBTA was not a reputable, credible certifying organization or that the public would be misled in any way by a lawyer advertising his certification by it. 496 U.S. at 102.

27

interest in 'protecting its citizens from unqualified and incompetent health care professionals,'" Majority Opinion at 10, is not the real harm addressed by section 426.0282. If it were, the district court would be entirely correct that the statute does not mitigate that harm in any direct or effective manner.

According to the majority, "[t]he harm the state is seeking to mitigate is not that consumers will be harmed by AAID certified dentists, but that consumers may be led into thinking that such a dentist enjoys state recognition and approval." Majority Opinion 12-13 n.7.[7] The real issue in this case, therefore, is whether *this* interest is substantial enough to pass constitutional muster. I do not believe that the Board has demonstrated that it is.

It is clearly not enough for the Board to identify some way – *any* way – in which Dr. Borgner's advertisements might confuse. As we said in *Mason*, "[u]nfamiliarity is not synonymous with misinformation." 208 F.3d at 957. *See also Peel*, 496 U.S. at 102-03 ("there is no evidence that the consumers . . . are misled if they do not inform themselves of the precise standards under which claims of certification are allowed"). In order to offend the Constitution, commercial speech must produce some "identifiable *harm*" that is significant

---

[7]I note that anyone interested can easily ascertain whether the organizations certifying Borgner are state approved.

enough to permit the state to mitigate it. *Mason*, 208 F.3d at 957. In this case, the only "harm" the Board has identified as proceeding from potential consumer confusion of the AAID credential with state certification is that the advertising dentist might gain a "competitive edge."[8] I do not think that this harm is constitutionally significant.[9] As a result, I would affirm the district court's holding that Florida Statute section 466.0282 has not been shown to target a genuine threat of identifiable harm substantial enough to justify the restrictions it places on Dr. Borgner's protected speech.[10]

2.    The Statute's Burden

I also believe that the statute fails to meet the fourth requirement of *Central Hudson* which is that it not be "more extensive than is necessary" to mitigate the

---

[8]The Board's expert rendered the following opinion about the findings of the surveys:
    These findings indicate that advertisement about "certification" and/or "specialization" in implant dentistry – regardless of whether respondents know the credentialing agency or not – will persuade much of the public that such dentists are worthy, capable, and trustworthy. Such advertising will confer a *professional advantage* upon dentists who advertise themselves as credentialed by organizations that are not accepted by the American Dental Association. (emphasis added)
    The district court concluded the "survey does not establish that this competitive edge is unmerited."

[9]Indeed, I believe that the state has an interest in protecting competition in the marketplace for dentistry.

[10]Of course, the state does have a substantial interest in preventing professionals from advertising credentials granted by bogus or sham organizations. The Board has conceded, and the majority does not hold, however, that this interest is present in this case.

harm identified by the state. 447 U.S. at 566. A consumer reading the required statutory disclaimer that the AAID is "NOT RECOGNIZED AS A BONA FIDE SPECIALTY ACCREDITING ORGANIZATION BY THE AMERICAN DENTAL ASSOCIATION OR THE FLORIDA BOARD OF DENTISTRY" may well conclude that the AAID is a bogus organization or diploma mill – neither of which conclusions is justified. In the absence of some demonstration that this confusion is not at least as likely as the confusion that AAID is a state-sponsored organization, I believe the statute fails the fourth prong of the *Central Hudson* test.

The "disclosure of truthful, relevant information is more likely to make a positive contribution to decisionmaking than is concealment of such information." *Peel*, 496 U.S. at 108. I believe that today's decision does not advance this principle, and for all the reasons given above, I respectfully dissent.